STAPLES, J.,
delivered the opinion of the court.
The first assignment of error arises upon a question asked a witness, and set out in the first bill of exceptions. This witness had testified that he went to the prosecutor’s house within a few minutes after the robbery was attempted; that the persons implicated in the robbery were described to him by Mrs. Priddy,. the wife of the prosecutor; that he went immediately in pursuit of these persons, and found the prisoner and a man named Thos. Oakley, who is also under indictment for the same offence, and several other persons, in a bar-room about a mile distant from the prosecutor’s house; and after the witness had described the dress and general appearance of the prisoner, he was asked by the commonwealth’s attorney “Whether the prisoner and the said Oakley corresponded on that night, in dress and appearance, with two of the men described by Mrs. Priddy?” The witness answered “that they did.” The counsel for the prisoner insists that this was error; that the witness ought to have been *945 asked to describe the appearance and dress of the prisoner and his companion, so that the jury might judge whether they answered to the description given by the prosecutor’s wife in her testimony.
Now, as a matter of fact, that precise course was pursued. The wife of the prosecutor did describe to the jury the appearance and dress of the persons engaged in the attempted robbery; and the other witness described the persons he saw in the bar-room. The jury were thus enabled to judge whether there were any material discrepancies in the description given by these witnesses respectively. But the commonwealth was not necessarily restricted to this mode of examination. The description of the prisoners given a few minutes after the occurrence, was more likely to be correct than any given on a subsequent occasion. On the trial the wife of the prosecutor might fail to remember many particulars or details observed and remembered at the time of the robbery. Her description given to the witness a few minutes afterwards was a part of the res gestee. And it was entirely competent to the commonwealth to prove before the jury the particulars of that description, as was done by the witness without objection by the prisoner. This proof being adduced, there could be no valid objection to an equiry of the witness whether the appearance and dress of the prisoner and his companion, as seen at the bar-room, corresponded with the description thus given. If it be conceded that the witness was thus requested to express an opinion, it is sufficient to say that upon questions of identity it is competent to the witness to give his opinion; the grounds upon which it rests being always open to the investigation of the adverse party. When the witness states that the prisoner at the bar is the same person *946 seen on a particular occasion, he is giving his opinion; and when he undertakes to describe the dress and appearance of the prisoner, it is still an opinion. The weight to which it is entitled depends upon his integrity, his intelligence, his accuracy and means of observation. In the present case the question asked the witness was not a violation of 'the rule, and the evidence thus elicited was clearly admissible. .
The second error assigned was the refusal of the court to give the instruction asked for by the prisoner, and in giving another in lieu thereof, as set out in the second bill of exceptions. We do not deem it at all necessary to quote the language of either of these instructions. That given by the court in effect affirms the proposition, that if the prisoner, along with other persons, made an assault upon the prosecutor, intending to rob him of his property; and in the course of a scuffle between the parties, one of the assailants snatched a pistol from the hands of the prosecutor and carried it away, and converted it to the use of either of them, this constituted the offence of robbery by the prisoner.
The manifest objection to this instruction is, that it affirms as a conclusion of law, that certain enumerated acts constitute the crime of robbery, without the slightest reference to the intention with which those acts were done. It assumes, that although the prisoner, in taking the pistol, had no design to steal it, but simply to prevent the prosecutor from using it against his assailants, the prisoner may nevertheless be convicted, if he intended to rob the prosecutor of other property not mentioned in the indictment.
We do not understand the learned judge of the Hustings court as denying that the animus furandi is an essential element in the crime of robbery. On the *947 ■contrary, he affirms that it is. Indeed, the rule upon this subject is too well settled to be how called in question. The taking must in all cases be accompanied with the felonious intent, and no subsequent felonious purpose will render the previous taking felonious. As expressed by Lord Coke, “the intent to steal must be when it cometh to his hands or possession; for if he hath the possession of it unlawfully, though he hath •animum, furandi afterward and carrieth it away, it is no larceny.”
It is not enough that the prisoner had at the same time an intent to steal other goods; the felonious intent must exist with regard to the goods charged in the indictment. Roscoe 838; 2 Arch. Cr. Pr. & Plead. 508.
This principle is exemplified by a case in which it was held, that the taking was a mere trespass, although the original assault was clearly with a felonious intent. A assaulted B on the highway, cum animo furandi, and searched, his pockets for money; but finding none, A pulled off the bridle of B’s horse and threw that and some bread which B had in pannels, about the highway; but did not take anything from B. It was resolved, upon conference with all the judges, that this was no robbery, because nothing was taken from B. But East, in his pleas of the crown, says that the better reason seems to be, that the particular goods taken were not taken with a felonious intent; for surely there was a sufficient taking and separation of the goods from the person. The same view of the case was taken by Russell and other writers on the criminal law.
In Rex v. Holloway, 24 Eng. C. L. R. 688, the prisoner was indicted for stealing a gun from the prosecutor, who was a game keeper. Vaughan, B., in sum *948 ming up, said, the prisoner might have imagined that the prosecutor would use the gun so as to endanger his life; and if so, his taking it under that impression would not be felony; but if he took it intending at the time to dispose of it, it would be felony. It was a question peculiarly for the jury.
And so in the case at bar, the prisoner and his associates in snatching the pistol from the prosecutor may not have intended at the time to steal it. If they did not so intend, if the only object was to prevent its being used against’them, then the subsequent carrying away and conversion would not constitute robbery. On the other hand, if the intention at the time was to deprive the prosecutor wholly of the pistol, the offence is robbery, although the assailants on snatching the pistol, may also have intended to prevent its being used against them. Both intents may have existed at the time. The jury may infer the felonious intent from the immediate asportation and conversion of the property, in the absence of satisfactory countervailing evidence by the prisoner. The whole question is one peculiarly for their consideration, to be determined upon all the facts and circumstances.
This view renders it unnecessary to notice particularly the instruction asked for by prisoner’s counsel. It may not be amiss, however, to say it is liable to one grave objection. It affirms that the goods must have been taken with the felonious purpose existing at the time to appropriate them to the use of the taker. This is a misapprehension; it is not essential that the person taking shall intend to appropriate the same to his own use. It is sufficient that his purpose is to deprive the owner wholly of them. For although a taking lucri causa is larceny, a taking in order to deprive the owner of his property is equally so. 2 Arch. *949 391. This principle of law, though sometimes not adverted to in the cases, is well understood and sustained by the authorities.
The third ground of error ought regularly to have been the first considered. ¥e have, however, deemed it best to follow the order adopted by the counsel, and to notice the various assignments of error as they are presented. By the third and last it is insisted that the Hustings court of Richmond, as at present organized, has no jurisdiction to try offences committed outside of the corporate limits and within one mile of those limits. It is conceded that this jurisdiction existed down to the period of the adoption of the present constitution. It was first conferred by an act to amend an ordinance of the city passed in 1803; reaffirmed by the act of 1841-’2; and continued in the revisal of 1860. It has existed for more than fifty years, and has been always regarded as an important and beneficial jurisdiction. If under the new arrangement it has been taken away, it has been done by implication, and without being so intended.
In Chahoon’s case, 21 Gratt. 822, this court held that the courts provided by the fourteenth section of the sixth article of the constitution (of which the Hustings court is one) are continuations and successions of the Corporation courts then in existence, invested with the same jurisdiction and powers, subject to such modifications and changes as were made by the constitution, or might be made by acts thereafter passed. One of these changes is that the Hustings court has been deprived of the greater part of its civil jurisdiction. Another is that it has been clothed with exclusive, original jurisdiction in criminal matters, within the city of Richmond, with the exception of proceedings against convicts in the penitentiary.
*950 The acts of 1803 and 1842, conferring upon the. court criminal jurisdiction outside of the city limits to the distance of one mile, has never been repealed, and must be held to be still in force. Whether the jurisdiction in civil matter over the same territory still remains or has been distributed among other courts, is-a question we are not called upon to decide. It is sufficient that the power of the court in criminal cases still exists unaffected by any modifications or changes resulting from the constitution or from statutory enactment.
From what has been stated, it will be perceived the-only error committed by the Hustings court was in giving the instruction already considered. For that error the judgment must be reversed, the verdict set aside, and the case remanded, to be proceeded with in conformity with the views here expressed.
Judgment reversed.