Moncure, P.,
delivered the opinion of the court.
The controversy in this case is between conflicting claimants of liens by deed of trust on the same tract of land lying outside of the limits of the city of Richmond, but within one mile thereof, executed by Rush Burgess and Mary E., his wife; one of them being to John A. Belvin and Lewis H. Erayser, trustees, to secure to John B. Davis payment of the sum of $2,750, for which the said Rush Burgess had made his negotiable note, dated 27th March, 1872, and payable one year after its date, and recorded in the clerk’s office of Henrico county court on the 29th day of March, 1872, and in the office of the court of chancery for the city of Richmond on the 19th day of December, 1876; and the other of them being to Clark Burgess, in trust to secure to Mary C. Burgess, of the city of Petersburg, payment of the sum of $4,000, for which the said Rush Burgess had made his negotiable note, dated December 1st, 1873, and payable five years after its date, with interest thereon at the rate of eight per centum per annum from its date until paid, and recorded in the clerk’s office of Henrico county court on the 22d day of August, 1874, and in the office of the court of chancery for the city of Richmond on the 16th day of December, 1876. The conflicting claim of the parties is for priority of lien under the deeds of trust, under which they respectively claim, as aforesaid.
*636 If the clerk’s office of Henrico county court was the proper place for the recordation of the said deeds, then the •said deed to Belvin and Frayser, having been there recorded on the 29th day of March, 1872, is entitled to priority over the said deed to Clark Burgess, which was not there recorded until the 22d day of August, 1874.
Then, was that the proper place for the recordation of the said deeds ?
It certainly would have been if the land conveyed had been situate, not only in the said county of Henrico, but more than one mile outside and beyond the limits of the city of Richmond.
But the said land was situate, not only in the county of Henrico, but within one mile of the said limits of the city of Richmond.
Then was the clerk’s office of Henrico county court the proper place for the recordation of the said deeds ?
The court is of opinion that it was not. From a period long anterior to that of the recordation of said deeds, the said clerk’s office had ceased to be the proper place for the recordation of deeds conveying land lying within one mile of the limits of the city of Richmond, and provision had been made for the recordation of such deeds within the limits of the said city, just as if the land conveyed had been situate within the said limits. In other words, for the purpose of the recordation of deeds for land within one mile of the limits of the city north of the James river, the said limits were, in effect, extended so as to embrace that space within them.
As early as 1803, an act of the legislature was passed giving jurisdiction over that space to the hustings court of said city. Acts of 1803, ch. 31, § 14, p. 22. By an act passed February 21, 1842, entitled “an act to revise and amend the charter of the city of Richmond,” it was, among other things, enacted that “the jurisdiction of said court shall extend one mile on the north side of James river, *637 without and around the corporate limits of said city, and , i. . every part thereof, including so much of the said river to low water mark on the shore of the county of as shall be between two lines drawn due south from the eastern and western terminations of the one mile aforesaid.” Acts of assembly 1841-2, p. 138, § 65. By an act passed March 30, 1852, entitled “ an act revising and reducing into one act the provisions of the charter of the city of Richmond,” it was, among other things, enacted that “the said court” of hustings “shall continue to have jurisdiction,” &e., “ not only within said corporate limits, but also for the space of one mile on the north side of James river without and around said city and every part thereof, &c. Acts of assembly 1852, p. 259, § 3. By the Code of 1860, ch. 157, §4, p. 661, it was enacted that “the said court of hustings shall continue to have civil and criminal jurisdiction,” &c., “not only within the corporate limits of the said city, but also for the space of one mile on the north side of James river without and around said city and every part thereof,” &c. This section of the Code is identical with the third section of the act passed March 15, 1860, entitled “ an act to amend the charter the city of Richmond and to reorganize the court of hustings of the said city”—acts of assembly 1859-60, ch. 169, § 3, p. 313—and was copied thereform.
By an act passed March 19,1867, amending the charter of the city of'Richmond—acts of 1866-7, ch. 29, § 89, p. 801—it is enacted that the court of hustings of the city of Richmond, &c., shall have jurisdiction, &c., “within the corporate limits of said city and within the space of one mile on the northern side of James river without and around said city and every part thereof, including so much of said river to low water mark on the shore of the county of Chesterfield as shall be between two lines drawn due south from the eastern and western termination of the one mile aforesaid.”
*638 an ac^ Passe<^ -^-Pr*l 7th, 1870, entitled “an act providing for courts for the city of Richmond and defining jurisdiction thereof”—ch. 43, pp. 42-44—it is, among other things, enacted as follows:
In section 1 that there shall be for the city of Richmond a cjrcnjt court, to be held, etc.; a hustings court, to be held,&c., “and a court of probate and record to be called the chancery court of the city of Richmond, to be held by a judge with like qualifications and elected in the same manner and for the same term as the judge of the hustings court.”
In section 5 that “ the chancery court of the city of Richmond shall exercise exclusively all jurisdiction now vested in circuit or corporation courts, concerning the probate and recordation of wills, the appointment, qualification and removal of fiduciaries, and the settlement of their accounts, the docketing of judgments, the recordation in the manner prescribed bylaw of deeds and other papers required by law to be recorded, and shall have exclusive jurisdiction of all suits and proceedings in chancery cognizable by law in any circuit court of the commonwealth.”
In section 6, that “so-soon as the clerk of the chancerv court of the city of Richmond shall have qualified, all chancery records,” &c., “ and all papers, books and records pertaining to the probate and recordation of wills, the appointment, qualification, and removal of fiduciaries, the recordation of deeds and other papers required by law to . be recorded, and the judgment docket shall be removed to, and kept in, the office of the clerk of the chancery court of the city of Richmond,” &c.
And in section 10, “that the said chancery court shall be always open as a court of probate and record, and the clerk thereof shall at all times exercise such powers, and perform such duties, as to docketing judgments and recording deeds and other papers, as have been heretofore exercised and performed by the clerk of the hustings court of the city of Richmond.”
*639 Thus stood the statute law of the state when the deeds in controversy were executed, and until after their recordation in the office of the court of chancery for the city of Richmond, one of which—to wit: the deed for the benefit of the appellant, Mary C. Burgess—was there recorded on the 16th day of December, 1876, and the other—to wit: the deed for the benefit of the appellee, John B. Davis—was there recorded on the 19th day of December, 1876. Therefore the lien of the former has priority of right over that of the latter, if such priority depends upon the order of time in which the said deeds were duly recorded respectively, and they wereso recorded in the office of the chancery court of the city of Richmond as aforesaid; unless at the time of the said recordation of the deed for the benefit of Mrs. Mary C. Burgess she had notice of the existence of the said deed for the benefit of the said John B. Davis; which was prior in date and time of execution to the said deed for the benefit of Mary C. Burgess.
Then were they duly recorded in the office of the court of chancery for the city of Richmond? In other words, was that the proper place for the recordation of said deeds ? And, if so, Did Mary C. Burgess, at the time of the said recordation of the said deed for her benefit, have notice of the existence of the said prior deed for the benefit of John B. Davis?
First. Were they duly recorded as aforesaid? In other words, was the office of the court of chancery for the city of Richmond the proper place for the recordation of the said deeds ?
The court is of opinion that it was; and that it was so, in effect, decided by this court, in the cases of Blackford, &c., v. Hurst, &c., 26 Gratt. 203; and Jordan’s case, 25 Gratt. 943.
In Jordan’s case it was held that the criminal jurisdiction of the hustings court of the city of Richmond extends one mile beyond the city limits, on the north side *640 of James river. The principle of that case applies to and governs this. If the criminal jurisdiction of the court of ■hustings embraces the territory within one mile of the limits of the city on the north side of the James river, so also does the civil jurisdiction of the court, if not a fortiori.
In Blackford, &c., v. Hurst, &c., it was held that by the charter of the.city of Lynchburg, jurisdiction being given to the court of hustings for said city, not only within the limits of the corporation, but also for the space of one mile without and around said city, a deed of trust conveying real estate lying outside the corporation limits, but within one mile without and around said city, is to be recorded in the clerk’s office of the corporation court of the city—and being so recorded, it is valid, and has priority over subsequent judgments against the grantor in the deed docketed in the clerk’s office of the county court. The principal of that case also applies to this.
At the time of the enactment of the law creating the present court of chancery of the city of Richmond—to wit: on the 7th day of April, 1870—there can be no doubt but that the court of hustings of the city of Richmond had jurisdiction outside of the limits of said city to the extent of one mile, and continued to have such jurisdiction from 1803 down to the date of the act in 1870; and it does not appear that such jurisdiction ceased, thereafter to exist. There does not appear to be anything- in the said act of 1870, nor in any subsequent act, which was intended to take away such jurisdiction. On the contrary, the said act of 1870, the substance of which, in this respect, has hereinbefore been set out, manifests an intention, on the part of the legislature, to leave the law unchanged in the said respect. It is unnecessary to repeat here the said provisions of the said act.
But as has been before stated, herein, the two eases before referred to in effect decide that there has been no such *641 ■change in onr statute law on the subject as was supposed by the counsel for the appellee, Davis, to exist.
Secondly. Did Mrs. Mary C. Burgess, at the time of the-said recordation of the said deed for her benefit, have notice of the existence of the said prior deed for the benefit of John B. Davis?
The deed for her benefit, having been duly recorded— to wit: in the office of the court of chancery for the city of Richmond—on the 16th day of December, 1876, prior to the recordation of the deed for the benefit of John B. Davis in the same office, on the 19th day of the same month in the same year, the said office being the proper place for the recordation of both of said deeds; it follows that the former has priority over the latter unless the party entitled to the benefit of the former had actual notice at least as early as the time of its recordation of the existence and effect of the latter. And such notice, to be sufficient to supply the place of due recordation, ought to be so distinct and free from doubt as fully to inform her on the subject.
Now, did she have such actual notice?
The court is of opinion that she did not, according to the proceedings and the proofs in the cause.
The testimony on one side—to wit: that of the appellees, of the witnesses, Rush Burgess and John B. Davis— tends to show that she had such actual notice. But the testimony on the other—to wit: that of the appellant, of the witnesses, Mary C. Burgess, and Clark Burgess, and Charles E. Gregory—tends to show the contrary, that she did not have such actual notice.
Certainly the former does not preponderate over the latter, and it ought to do so decidedly, in order to prevail over the effect of prior due recordation.
But besides, the other circumstances of the case tend strongly to sustain the latter, and to show that the deed of trust for the benefit of Mary C. Burgess was executed by *642 Bush Burgess without informing her of the prior lien on ° the same property for the benefit of John B. Davis.
No notice whatever was taken of the said prior lien in the said deed of trust for the benefit of said Mary C. Burgess, as would no doubt have been done if the latter lien had been intended by her to be taken subject to the former. The former lien was to secure a debt which had become due and payable before the latter was executed, which bore interest at the rate of ten per centum per annum,, and for which debt and interest the land conveyed was at any time liable to be sold. It was to the manifest interest of Bush Burgess to borrow money of Mrs. Mary C. Burgess at eight per cent, interest to pay off the said debt already due by him at ten per cent, interest, for which debt and interest the land conveyed was at any time liable to be sold. He borrowed four thousand dollars of her for five years at eight per cent, interest, and the presumption is that one of his motives for doing so was to pay off the debt he then owed, on which he was paying ten per cent, as aforesaid. Being asked the question, Did you not expect to pay off that note (due to said Davis as aforesaid) with the money obtained from Mary C. Burgess, and thereby reduce the rate of interest on the money you had borrowed ? he answered : “ Probably so and probably not.”
Such was probably his intention when he borrowed the money of Mary C. Burgess as aforesaid, and expecting to discharge the said prior lien out of the said money soon after he received it, he considered it unnecessary to name the said prior lien, either to the said Mary C. Burgess or in the deed of trust executed for her benefit as aforesaid.
This circumstance, therefore, strongly confirms her ver- • sion of the fact in regard to notice, which is a subject of controversy as aforesaid.
In regard to Clark Burgess, trustee in the deed of trust for the benefit of Mrs. Mary C. Burgess; he never executed the said deed, nor had any notice that he was named *643 as trustee therein, until after the said deed was recorded in the office of the chancery court of Richmond. Notice to him prior to that time, therefore, of the existence of the prior deed, for the benefit of John B. Davis, would not affect Mary C. Burgess, as he was not then her agent, if in fact he received such prior notice, about the fact or time of his receiving which the evidence in the record is uncertain and doubtful, but it is immaterial.
There may be some doubt whether Alexander Don nan did not receive notice of the existence of the said prior lien for the benefit of John B. Davis before and about the time of the recordation of the deed for the benefit of Mrs. Mary C. Burgess in the office of the chancery court of the city of Richmond, and whether he was not then her agent in the transaction, so as to affect her with the same notice as principal.
But even if that be so, such notice cannot affect her, as she had, years before, loaned the money and received the deed of trust aforesaid, without any notice of any prior lien, and it only remained for her to have the deed for her benefit duly recorded; which she accordingly did, on the 16th day of December, 1876, three days before the deed of trust for the benefit of John B. Davis was so recorded.
The court is therefore of opinion that the court below erred in deciding that the weight of evidence is to the effect that Mrs. Burgess and Clark Burgess both had notice of the Belvin & Fray ser deed of trust before the recordation of exhibit A, on the 16th December, 1876, in the chancery court, and so were not purchasers for value without notice, so far as regards the said Belvin & Frayser deed. And that the decree appealed from be reversed and annulled so far as it is hereinbefore declared to be erroneous, and be affirmed in all other respects; and the case is remanded to said court of chancery for further proceedings, to be had therein in conformity with the foregoing opinion.
Which is decreed accordingly.
*644 The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the deed of trust from Bush Burgess and wife to Clark Burgess, trustee, dated December 1st, 1873, is a prior lien on the land in the said deed described to the lien created by the de.ed from Bush Burgess and wife to John A. Belvin and Lewis H. Frayser, trustees, dated the 27th day of March, 1872; and •doth accordingly so adjudge, order and decree.
And the court doth further adjudge, order and decree, that so much of the decree appealed from in this case as is in conflict with the foregoing opinion and decree is erroneous and be reversed and annulled, and' that the residue thereof is not erroneous, and be affirmed; and that ■the appellant, Mary C. Burgess, recover against the appellee, John B. Davis, her costs by her expended in the prosecution of her appeal aforesaid here. And it is further decreed and ordered, that this cause be remanded to the said chancery court for the city of Richmond, for further proceedings to be had therein to a final decree, in •conformity with the foregoing opinion and decree.
Which is ordered to be certified to the said chancery court of the city of Richmond.
Decree reversed.