## THE CITY OF GALVESTON v. J. M. BARBOUR & WIFE.

SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Municipal Corporation—Liability.*—A municipal corporation is liable for damages for an injury resulting from neglect to keep its sidewalks and streets in repair, in the absence of an express statute declaring the liability.

*Same.*—In order to render the corporation liable, it must be shown that it had notice of such defect as caused the injury, for it cannot be presumed that notice of every trifling defect exists.

*Damages.*—In an action by the parents for an injury resulting in the death of their minor son, no damages are recoverable for mental suffering of the parents.

*Same—Measure of.*—In such an action, the true measure of damages would be a sum equal to the pecuniary benefit the parents had a reasonable expectation of receiving from their child, had he not died; and the cost of medical and other like expenses, necessarily incurred.

Geo. Mason, for appellant.

Appeal from Galveston county.

Stayton, J.: The question of liability of a municipal corporation for damages for an injury resulting from neglect to keep its sidewalks and streets in repair, has been considered in the case of The City of Galveston v. Posnainsky, decided at the present term, and for the reasons given and upon the authorities cited in that case, we hold in this case that such a corporation is liable for such injury in the absence of an express statute declaring the liability.

This action was brought by the appellees to recover damages for an injury which resulted in the death of their minor son, which they alleged was caused by the neglect of the appellant to maintain in good condition one of the sidewalks of the city.

The court below sustained a demurrer to so much of the petition as set up injury to the feelings of the parents as an element of damage; and, in reference to the measure of damage, instructed the jury as follows: "And as to amount or measure of damage, there is no rule that I can give you as the proper measure thereof. If you should find the plaintiff entitled to damages, you must look to all the evidence and attendant circumstances to ascertain what amount of damages the plaintiffs are entitled to, proportioned to the injury resulting from the death."

The appellant requested the court, in effect, to instruct the jury, if they found for the plaintiff, that they must consider, in determining the amount of damage, the pecuniary loss resulting to them through the death of their son, and that they could not give damage for distress, sorrow or mental suffering of the parents. These charges were refused.

It is well settled that in actions of this character no damage can be given for mental suffering of the persons for whose benefit such an action is brought; and, although the court had sustained an exception to so much of the petition as set up mental suffering of the

parents, yet, the court when requested should have given a charge upon this subject, and especially so when the charge, as given by the court, was so general.

The charge given placed no limit on the discretion of the jury, and tended to influence the jury to believe that the law placed no restraint upon them, and left the whole matter to their unbridled and uninformed discretion.

In this class of cases, which it is difficult to form with that exactness which may be done in some other classes of cases, the actual damage to which the plaintiff or plaintiffs are entitled; yet, it is not true that the law gives no measure of damages in such cases, and instructions should be given, definite in their character, as to the true measure. · (Pennsylvania R. R. Co. v. Vandner, 36 Penn., 303).

In such cases as this the true measure of damages would be a sum equal to the pecuniary benefit the parents had a reasonable expectation of receiving from their child, had he not died; taking into consideration the fact that he was a minor, 2 Sedwick on Damages, 537, and in addition to this we are of the opinion, in cases in which the injury is to a minor child, that the parent may recover the cost of medical and other like expenses necessarily incurred. There was no question of exemplary damage in this case. There is no direct proof as to how the child received the injury of which it died, but it is contended that he received a wound on his foot from a projecting iron bolt in the sidewalk, on one of the streets of the city of Galveston.

John M. Barbour, the father, and one of the plaintiffs, testified, over the objections of the appellant, that "next morning (he, the father) told him (the son) to come and show the object that had hurt him. From what he said, witness examined a bolt in the curbing of the sidewalk on west side of Eighteenth street, between Postoffice and Market streets, being the first bolt in the curbing next to the alley, and between the alley and Hibbert's store, and found the drops of blood right by the bolt."

The witness then went on to describe the bolt and stated that it projected above the curbing and had a sharp edge. He further stated that "the boy was with witness when he examined the bolt. Witness went there to look at it in consequence of what had occurred between him and his son. The boy was then doing very well."

Mrs. Barbour, the mother, was permitted to state over the objec-

tion of the defendant, that "the boy came in crying and seemed to be suffering very much with his foot, and said he had hurt it on a screw bolt in the curbing of Hibbert's pavement." This conversation oc· curred on the same evening the boy received the hurt.

The testimony of the father necessarily had upon the jury all the effect which his statement that his son told him he was injured by the bolt, which he examined, could have had, if made. The evident intention and purpose, which by the course pursued, was fully accomplished, was to get before the jury the declaration of the child as to the manner in which he was injured. If the father under the circumstances could not legally have been permitted to narrate before the jury what his son had told him, then his testimony which was entitled to have, and must have had with the jury the same effect, ought not to have been admitted. Parties can not do by indirection what they could not do directly.

The father testified to matters which occurred the next day after the child was hurt, and the matter to which he testified could in no sense be termed *res gestae.*

This testimony was, in effect, a narration of what his son told him as to the cause of the injury which he received the day before, and should have been, in so far, excluded. (1 Greanleaf, 108; Wharton on Evidence, 261, 262; Wharton's Criminal Evidence, 690, 691; Abbott's Trial Evidence, 589; People v. Oaris, ·56 N. Y., 101; O. & M. R. R. Co. v. Hammersly, 28 Ind., 371).

Too great a time elapsed; the statement and acts of the son were not the natural utterances of a simple truthful child prompted by the suffering endured at the time through the injury; there was too much calculation and method on the part of the father, who then had no reason to believe that the injury was more serious than boys often receive in the most innocent pastime, to make these things to which he testified *res gestae.* It was simply hearsay, with no feature to relieve it from the operation of the rule which excludes that class of declarations.

The declarations made to the mother, by the child were of a different character, he came home immediately after he received the injury, crying and smarting with pain resulting from it, and childlike and naturally, made known to her how he had been hurt, and we may say of his declarations made under such circumstances as was said by the Supreme Court of Missouri, in the case of Haeriman

et al., v. Stowe, 57 Mo., 97. "The accident and the declarations formed connecting circumstances; and, in the ordinary affairs of life, no one would doubt the truth of these declarations, or hesitate to credit them as evidence." The weight to be given to the mother's testimony, and her credibility were questions for the jury.

We think the evidence of the mother was admissible, (——— v. Fughnor, 60 Mo., 215; Elkins, Bly & Co. v. McKean, 79 Penn. St. 501; Hart, admr., v. Powell, 18 Ga., 639; Jordan's case, 25 Grass 945; Commonwealth v. McPike, 2 Cush. Mass., 181).

The evidence of Mrs. Barbour, however, did not show that the injury resulted from the neglect of the city, nor identify the instrument through which the hurt was received, and the testimony of Mrs. Hibbert tended to show that the injury was not received through a projecting bolt, and it may be that but for the improper testimony of the father the verdict would have been different. '

In cases of this character, to render a municipal corporation liable there should be evidence showing that it had notice of such defect as caused the jury, for it can not be presumed that notice of every trifling defect exists. For the errors pointed out, the judgment is reversed and the cause remanded.

Chief Justice Willie did not sit in this case.