The Louisville, New Albany and Chicago Railway Co. *v.* Buck, Adm'r.

No. 13,240.

## THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* BUCK, ADMINISTRATOR.

NEGLIGENCE.—*Injury Resulting in Death.*—*Implied Damage.*—*Defective Machinery.*—The law will imply pecuniary loss in some amount to the wife and child, by the death of the husband and father, who was, at the time, employed and presumably receiving wages, and, therefore, able to discharge his obligation to support them; and a complaint, showing these facts, and that his death was caused by defective machinery owned and used by his employer, a railroad company, is sufficient.

SAME.—*Injury on Sunday.*—*Recovery for.*—The fact that decedent received the injury on Sunday while engaged in common labor will not prevent a recovery therefor.

SPECIAL VERDICT.—*Instructions.*—*Practice.*—Where the jury are required to return a special verdict, general instructions upon the law of the case are not proper, and error predicated upon the giving or refusal to give such instructions is not available.

SAME.—*Defects.*—*How Reached.*—Where the jury return a special verdict, the failure to find as to any facts in issue is not ground for a *venire de novo.* Courts will assume a failure of proof as to the facts not found, on such motion, though such omission might be ground for a new trial.

EVIDENCE.—*Res Gestæ.*—*Declarations.*—Declarations of a decedent made within two minutes after the injury was sustained, while he remained in the presence of the train and the defective machinery causing the injury, are admissible as part of the *res gestæ.*

From the Benton Circuit Court.

*G. W. Easley, G. R. Eldridge, G. W. Friedley, S. O. Bayless, T. L. Sullivan* and *A. Q. Jones,* for appellant.

*J. R. Coffroth, T. R. Stuart* and *E. P. Hammond,* for appellee.

MITCHELL, J.—Buck, as administrator of the estate of George H. Bennett, deceased, commenced suit against the Louisville, New Albany and Chicago Railway Company, alleging that the company had wrongfully caused the death of the decedent, to the damage of his surviving widow and child.

The complaint was in three paragraphs. It is charged in the first two paragraphs that the intestate was in the employ of the railway company as brakeman, and that he was fatally injured while uncoupling cars, on account of dangerous and defective appliances and machinery which the company negligently supplied.

The same facts, substantially, were stated in the third paragraph, with the addition, that the accident and fatal injury to the plaintiff's intestate was caused by the careless and negligent habits, and by the incompetency, of the engineer who had control of the engine at the time the accident happened, and that the incompetency and negligent habits of the engineer were known to the company and unknown to the intestate.

No question is made as to the sufficiency of the complaint, except it is urged that it does not sufficiently appear by any averment therein that the widow or child of the decedent sustained damage in any wise on account of the defendant's negligence.

The averments in the complaint relevant to the point thus made are, that Bennett was in the employment of the defendant as brakeman at the time of his death, and that he left surviving him as his next of kin and only heirs his widow, Fidella J. Bennett, and his daughter, Longretta May Bennett, both of whom are still living, the latter being four years of age.

It is also averred that " Said administrator brings this action for the use and benefit of said widow and child, who, by reason of the death of said decedent as aforesaid, had sustained damages in the sum of ten thousand dollars."

For the appellant it is insisted that the general averment that the widow and child of the decedent had sustained damage in a specified sum, was not sufficient, but that the pecuniary loss, either present or prospective, resulting to them from the intestate's death, should have been specially pleaded. *Regan*

v. *Chicago, etc., R. W. Co.*, 51 Wis. 599, is relied on to sustain the view thus contended for.

Without pointing out the distinction between the case cited and that under examination in respect to the question involved, it is sufficient to say it appears in the complaint in the present case that the decedent was, at the time of his death, in the employ of the railroad company as a brakeman, and that he left a widow and one child four years old. It is an unavoidable inference, therefore, that he was in the vigor of manhood, and that he was, at that time, engaged in earning money for the support of his wife and child. *Kelley* v. *Chicago, etc., R. W. Co.*, 50 Wis. 381.

Section 284, R. S. 1881, gives a right of action to the personal representative, for the benefit of the widow and children, or next of kin, of one whose death has been caused by the wrongful act or omission of another, provided the former could have maintained an action against the latter had he lived.

While there is some discord in the decisions of courts, in respect to the right to maintain the action, even for nominal damages, without averring and proving actual pecuniary loss by those for whose benefit the suit is brought, there can be no doubt but that within the rule generally prevailing, the law will imply substantial pecuniary loss in some amount to the wife and child from the death of one who sustained the relation of husband and father to them, and who was at the time presumably receiving wages, and who was therefore possessed of the ability to discharge his obligation to support those dependent upon him. *Atchison, etc., R. R. Co.* v. *Weber*, 33 Kan. 543 ; *Houghkirk* v. *President, etc., D. & H. C. Co.*, 92 N. Y. 219 ; Shearman & Redfield Neg. (4th ed.), section 137.

Whatever the rule may require as applied to other cases, and in respect to the *quantum* or character of proof on the subject of pecuniary loss, there can be no doubt but that a general averment of damages in a case like the present is

The Louisville, New Albany and Chicago Railway Co. *v.* Buck, Adm'r.

sufficient as against a demurrer to the complaint. It may be well to observe here, as applicable to this question, which is presented in another aspect later on in the record, that no precise rule for estimating the loss recoverable under the statute can be laid down. When the relation of the party, whose death has been caused, to those for whose benefit the suit is being prosecuted, has been shown, and his obligation, disposition and ability to earn wages or conduct business, and to care for, support, advise and protect those dependent upon him, the matter is then to be submitted to the judgment and sense of justice of the jury. *Board, etc.,* v. *Legg,* 93 Ind. 523 ; *Tilley* v. *Hudson, etc., R. R. Co.,* 29 N. Y. 252 ; *Castello* v. *Landwehr,* 28 Wis. 522.

The jury returned a special verdict, which, so far as they are material to the questions for decision, exhibited the following facts : The deceased, a man about thirty years of age, in good health and of industrious habits, was in the employment of the defendant railroad company as brakeman on a freight train. On Sunday night, November 25, 1883, the train, of which he was one of the crew, left Michigan City for Lafayette. Between 9 and 10 o'clock, the train was stopped at the crossing of the Pan-Handle railroad for the purpose of taking on more cars. It was part of the duty of the decedent to couple and uncouple cars which were to be attached to, or detached from, the train. Soon after the train stopped, he went in between the engine and the car attached to it for the purpose of uncoupling the car from the engine. The car was loaded with lumber, and belonged to the defendant company, but the decedent had never seen it until after it was loaded, when starting from Michigan City. The reach-rod, which when properly adjusted held the brake-beam in place, was, and had been for several days, absent from the brake-beam in front of the wheels on the car next the engine. The absence of this rod was unknown to the decedent, but the jury find that it was, or might have been, known to the defendant. Its absence caused the beam to hang lower and

more forward than it otherwise would have done, but the fact that the rod was gone was not discoverable except by one stooping down and looking under the car.   While attempting to uncouple the car, being for some reason unable to get the coupling pin out of the draw-bar, the decedent held the pin up as far as he could get it, and then signalled the engineer to move the engine forward.   The engineer obeyed the signal, but immediately, and without warning, reversed the lever and threw the engine back, crowding the decedent against the car, and then again moved forward.   While so crowded back, and before he could recover or extricate himself from his position, the decedent's feet were caught by the defectively attached brake-beam, and he was thrown under, and run over by the car, which was moving forward.   In this way he received injuries which are particularly described, and which resulted in his death the following morning.   It was found that the decedent left a widow and child, as alleged in the complaint, and that they were damaged by his death in a specified sum.   There was judgment for the plaintiff accordingly.

The appellant insists that the judgment ought to be reversed, and urges as one of the reasons, that the jury found that the injury which resulted in the intestate's death, was received on Sunday, while he was engaged at common labor, in pursuance of a contract with the railway company, and that it was not made to appear that the work, about which he was engaged, was a work of necessity.   We had occasion to consider this question in *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18, where it was presented in substantially the same manner as in the present case.   Our conclusion then was, that a person, injured by the negligent omission of another to perform a legal duty, would not be denied a recovery, even though it appeared that the injured person was, at the time of receiving the injury, acting in disobedience of his collateral obligation to the State, which required of him the observance of the Sunday law.   If the railway

company violated its duty by furnishing machinery and ap- pliances which it knew were defective, the danger to an employee who was required to use the appliances, in ignorance of their defective condition, was the same on one day as on another.   That they were being used on Sunday, rather than on Monday, neither contributed to, nor was it the efficient cause of, the injury which gave rise to this action, nor can the railroad company now interpose and become the champion of the Sunday law as an excuse for its wrong, or to defeat a recovery.   *Sutton* v. *Town of Wauwatosa,* 29 Wis. 21.

It is quite true that a plaintiff will in no case be permitted to recover when it is necessary for him to prove his own illegal act or contract as a part of his cause of action, or when an essential element of his cause of action is his own violation of law.   *Holt* v. *Green,* 73 Pa. St. 198 ; *Coppell* v. *Hall,* 7 Wall. 542, 558 ; *Steele* v. *Burkhardt,* 104 Mass. 59 ; *McGrath* v. *Merwin,* 112 Mass. 467.

But where he can prove his cause of action without proving that he was violating the law, even though it appears incidentally that he was at the time acting in disobedience of some statute, unless his illegal act was the efficient or proximate cause of the injury complained of, or unless the illegal act or contract is the foundation of his action, a recovery may be sustained nevertheless.   Cooley Torts (2d ed.), pp. 178–179.

Whoever travels about from place to place for the purpose of gaming with cards or otherwise, acts in violation of a criminal statute.   It would hardly be claimed that a recovery against a common carrier would be denied if it appeared incidentally in evidence that a passenger injured through the carrier's negligence was travelling in violation of the statute against gaming.   Why should a brakeman, who is required to work in violation of the Sunday law, be denied a recovery ?   The gist of the action in the present case is the negligent failure of the railway company to furnish safe and suitable appliances whereby the death of the

plaintiff's intestate was wrongfully caused while he was in the company's service as a brakeman. The contract of employment, and the time when the injury occurred, were mere incidents to, and were in no respect the foundation of, the action. *Louisville, etc., R. W. Co.* v. *Frawley, supra; Frost* v. *Plumb,* 13 Am. L. Reg. 537.

It may be conceded that the decisions in some of the States are not all consistent with the conclusions above stated, but in our opinion these conclusions are in accord with the better view of the subject, and have the support of the weight of authority.

The defendant presented to the court forty-three separate instructions, and asked that they be given the jury. Of these, twenty were given and the balance refused. The refusal to give these instructions is made a ground of complaint.

It has frequently been ruled that where the jury has been required to return a special verdict, general instructions as to the law of the case are not proper. The court should explain to the jury distinctly what-facts are material to be found within the issues, and give them such instructions as will enable them to find and settle the facts, so that the law may be applied to the facts found by the court. *Louisville, etc., R. W. Co.* v. *Frawley, supra; Louisville, etc., R. W. Co.* v. *Flanagan,* 113 Ind. 488.

Within this rule an examination of the instructions given by the court leaves no doubt but that the jury were adequately directed in respect to the facts necessary to be covered by the special finding.

Leaving out of view all of the facts found relating to the alleged negligence and incompetency of the engineer, and eliminating from the special verdict everything in the nature of conclusions of law, it seems to us the facts found make a case justifying a recovery. They show that the railroad company failed in its obligation to supply its employee with safe and suitable appliances and machinery to do the work required of him, and that it required him to use machinery

which it knew to be defective. This established the company's negligence.

The special verdict also shows that the defect in the machinery was unknown to the decedent, that it was not obvious, and could not have been discovered except by stooping down and looking under the car. This showed that the employee was not guilty of contributory negligence in going in between the cars to uncouple them, notwithstanding the defective condition of the appliances.

It is settled beyond controversy that railroad employees are presumed to understand the nature and hazards of the employment when they engage in the service, and that they assume all the ordinary risks and obvious perils incident thereto. Such risks are presumably within the employee's contract of service. *Jenney Electric Light and Power Co.* v. *Murphy*, 115 Ind. 566.

This does not mean, however, that the latter may not repose confidence in the prudence and caution of the employer, and rest on the presumption that he has also discharged his duty, by supplying machinery free from latent defects, which expose the employee to extraordinary and hidden perils. *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Hough* v. *Railway Co.*, 100 U. S. 213.

While the employer may expect that an employee will be vigilant to observe, and that he will be on the alert to avoid all known and obvious perils, even though they may arise from defective tools and machinery (*Atlas Engine Works* v. *Randall*, 100 Ind. 293), yet the latter is not bound to search for defects or inspect the appliances furnished him to see whether or not there are latent imperfections in or about them which render their use more hazardous. These are duties of the master, and unless the defects are such as to be obvious to any one giving attention to the duties of the occasion, the employee has a right to assume that the employer has performed his duty in respect to the implements and machinery furnished. *Bradbury* v. *Goodwin*, 108 Ind. 286;

*Little Rock, etc., R. W. Co.* v. *Leverett,* 48 Ark. 333; *Fort Wayne, etc., R. W. Co.* v. *Gildersleeve,* 33 Mich. 133; *Hughes* v. *Winona, etc., R. R. Co.,* 27 Minn. 137; Wood Master and Servant, section 376.

The facts found very clearly furnish a basis for the application of the foregoing principles, and these principles, when applied to the facts found, sustain the judgment of the court upon the special verdict. Many of the instructions asked would, if they had been given, necessarily have required the jury to return very much of the evidence as part of their special verdict, while others would have required the statement of mere conclusions, which the jury could not properly draw. For example, in one of the instructions the court was asked to require the jury to find what was the proximate cause of the death of Bennett. In another, the court was asked to require the jury to describe in their verdict the appliances attached to the car for the purpose of breaking it. The facts showing the manner in which the accident and injury occurred, and the condition of the car and appliances attached having been particularly found and set out in the special verdict, it became a question for the court to determine whether or not the intestate's death was proximately caused by the negligent omission of duty on the part of the railroad company. We are unable to perceive how the court would have been aided in arriving at a correct conclusion if the jury had been required to describe the appliances in their verdict. The material facts in that connection were that there inhered in the appliances a hidden or latent defect which increased the ordinary and obvious perils of the service in which the intestate was engaged, and which made them an efficient agency in producing the fatal injury.

We have examined the other instructions asked and refused, and without commenting upon them in detail we need only say that the court committed no error in refusing them.

It is contended that the court erred in overruling a motion made by the appellant for a *venire de novo.* In this we do

not concur. It must now be accepted as settled that a special verdict will not be considered as so uncertain, ambiguous or defective as that no judgment can be rendered thereon, because some of the issues in the case are not affirmatively or expressly settled or determined therein one way or the other. If the verdict is silent concerning any of the facts in issue, the court will assume, upon a motion such as that under consideration, that the party upon whom rested the burden of proof in respect to these facts, failed to prove them. If the failure to find the facts was contrary to the evidence, it may furnish a sufficient reason for a new trial, but the failure does not render the special verdict objectionable, nor does it afford any ground for a *venire de novo*. *Glantz* v. *City of South Bend*, 106 Ind. 305 ; *Deeter* v. *Sellers*, 102 Ind. 458 ; *Mitchell* v. *Colglazier*, 106 Ind. 464.

It may be conceded that there are some merely evidentiary facts found in the special verdict, and that it also embraces many statements which are essentially conclusions of law. Notwithstanding all this, it seems clear to us that, stripped of all these, the verdict is yet sufficient to lead up to and support the judgment, and that the motion can not be successfully urged on that account.

Questions are made and discussed concerning the propriety of rulings of the court in admitting evidence tending to show that the engineer who had the engine in charge at the time the decedent was injured was negligent and incompetent. According to our view of the case there was no reversible error in any of these rulings, for the reason that the special verdict sustains the judgment, even though all the facts pertaining to the competency or conduct of the engineer be eliminated from the case. While we have discovered no error in the ruling, we do not regard them of sufficient materiality to justify us in prolonging the opinion by setting them out separately and examining them in detail.

The only other question which requires consideration relates to the ruling of the court in admitting in evidence cer-

tain declarations of the decedent, which were made immediately after he was injured and substantially while he was being extricated from under the wheels of the car which had passed over him. The conductor of the train testified that he was on the caboose when he received notice that the decedent was hurt, and that he immediately ran forward and found him under the rear end of the second car from the engine. The following is the testimony of the conductor upon which the objection is predicated: " When I took him out I asked him ' how did this happen ?' He told me he was uncoupling the engine from the first car, but could not get the pin clear out of the draw-bar, and had to hold it up, and hallooed to the engineer to go ahead. He started and by some cause ' threw the engine over,' and came back against him before he could get out and crowded him back against the car, and the brake-beam catching his leg, pulled him down and the cars ran over him."

It is not always easy to determine when declarations having relation to an act or transaction should be received as part of the *res gestæ*, and much difficulty has been experienced in the effort to formulate general rules applicable to the subject. This much may, however, be safely said, that declarations which were the natural emanations or outgrowths of the act or occurrence in litigation, although not precisely concurrent in point of time, if they were yet voluntarily and spontaneously made so nearly contemporaneous as to be in the presence of the transaction which they illustrate and explain, and were made under such circumstances as necessarily to exclude the idea of design or deliberation, must, upon the clearest principles of justice, be admissible as part of the act or transaction itself. *Toledo, etc., R. W. Co.* v. *Goddard,* 25 Ind. 185; *Commonwealth* v. *McPike,* 3 Cush. 181 (50 Am. Dec. 727); *Lund* v. *Inhabitants, etc.,* 9 Cush. 36; *Augusta Factory* v. *Barnes,* 72 Ga. 217 (53 Am. Rep. 838); *Insurance Co.* v. *Mosley,* 8 Wall. 397; *People* v. *Simpson,* 48 Mich. 474; *Keyser* v. *Chicago, etc., R. W. Co.*

(Mich.), 33 N. W. Rep. 867; *Kirby* v. *Commonwealth*, 77 Va. 681 (46 Am. Rep. 747); *City of Galveston* v. *Barbour*, 62 Texas, 172 (50 Am. Rep. 519); *State* v. *Horan*, 32 Minn. 394 (50 Am. Rep. 583); *Little Rock, etc., R. R. Co.* v. *Leverett, supra; State* v. *Ah Loi*, 5 Nev. 99; *Hanover R. R. Co.* v. *Coyle*, 55 Pa. St. 396, 402; *Durkee* v. *Central Pacific R. R. Co.*, 69 Cal. 533; *Lambert* v. *People*, 29 Mich. 71; *Hill's Case*, 2 Gratt. 594; *Jordan's Case*, 25 Gratt. 945; *Harriman* v. *Stowe*, 57 Mo. 93; *Entwhistle* v. *Feighner*, 60 Mo. 215; *Elkins* v. *McKean*, 79 Pa. St. 493; *Hart* v. *Powell*, 18 Ga. 635; *Driscoll* v. *People*, 47 Mich. 413; *Casey* v. *New York, etc., R. R. Co.*, 78 N. Y. 518; *McLeod* v. *Ginther*, 80 Ky. 399; Wharton Ev., sections 258–267.

Any other rule would in many instances operate to defeat the accomplishment of justice, by excluding evidence of the most trustworthy character. While some of the cases cited above carry the doctrine to its extremest length, they all illustrate and apply the general principles, consistent with the conclusions we have heretofore enunciated.

The declarations under consideration were made within, not to exceed, two minutes of the occurrence, while the declarant remained in the presence of the train, and the alleged defective machinery, which was instrumental in producing his hurt, and before he had been removed from the spot where he received his fatal injury. The surrounding circumstances, in the presence of which the declarations were uttered, were, therefore, silent witnesses in corroboration of his statement. This, taken in connection with the condition of the decedent, who was suffering under the shock of an injury from which he died in about six hours afterwards, necessarily excludes the idea of calculation or ability to manufacture evidence for future purposes. The court committed no error in admitting the evidence.

There are a number of incidental questions of minor importance presented and discussed by counsel, but so far as

Lake Shore and Michigan Southern R'y Co. v. C., W. and M. R'y Co.

they are material to the case as we have felt constrained to consider it, they have all been disposed of by what has preceded.

Without entering upon a detailed examination of the evidence, which tends to support the verdict, we content ourselves with saying that while some of the criticisms of counsel seem plausible, and carry with them much force, we are nevertheless constrained to hold, since there was some evidence which the court and jury, whose duty it was to judge of its weight and credibility accepted as sufficient, that the judgment can not now be disturbed.

The judgment is, therefore, affirmed, with costs.

Filed Jan. 10, 1889; petition for a rehearing overruled March 30, 1889.