### TEXAS EMPLOYERS' INS. ASS'N v. TABOR.   (No. 1778.)

(Court of Civil Appeals of Texas. El Paso. June 4, 1925. Rehearing Denied June 25, 1925.)

1. **Appeal and error** ⟾544(1), 553(1)—Overruling motion for continuance not reviewed in absence of bill of exceptions.

In absence of bill of exceptions, properly prepared and made part of record, trial court's action in overruling motion for continuance cannot be reviewed, and an exception noted in order overruling motion will not supply place of such bill.

2. **Master and servant** ⟾361—Relation of employee arises on contract express or implied.

Relation of employee, both at common law and under Compensation Act arises on contract express or implied.

3. **Contracts** ⟾138(1) — Action cannot be maintained to enforce contract to perform an act in violation of law.

An action cannot be maintained to enforce contractual liability on a contract to perform an act in violation of law.

4. **Negligence** ⟾82—Negligence of plaintiff in violating law no bar to recovery unless proximate cause of injury.

Negligence of plaintiff, because of violation of statute or ordinance, will not bar his right of recovery in action for personal injuries, unless such negligence was proximate cause of injury.

5. **Master and servant** ⟾361—That employee working in violation of Sunday law at time of injury no bar to recovery therefor.

That employee, at time of his injury, was engaged in work in violation of Sunday law (Pen. Code 1911, arts. 299, 300), held not to bar right of recovery therefor, as employee's status as such was not affected thereby.

6. **Master and servant** ⟾398—Informal notice of injury and demand for compensation sufficient.

Workmen's Compensation Act, pt. 2, § 4a, (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43), does not require formal service of notice of injury to employee, and formal demand for compensation, but informal notice and demand is sufficient.

7. **Master and servant** ⟾375(1)—Retaking of possession of automobile sold on credit held within automobile dealer's usual course of business.

The retaking of possession of automobile by automobile dealer selling it on credit is in usual course of its business, and dealer's employee injured while retaking such possession is within protection of Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

8. **Master and servant** ⟾361—Relation of employee and employer between parties held not affected by certain condition in mortgage.

Fact that plaintiff, under mortgage securing automobile purchased from defendant, was bound to reimburse defendant for expenses in retaking possession if plaintiff defaulted did not affect relation of employee and employer arising between them under agreement whereby defendant was to pay plaintiff for his services in returning automobile to defendant.

9. **Master and servant** ⟾405(6) — Evidence held to show that failure to make lump sum settlement to injured employee would be manifestly hard and unjust.

Uncontradicted evidence that injured employee is wholly without means, needs surgical attention, cannot read or write, is dependent for a livelihood upon manual labor, with dependent wife, six small children, and an aged mother, held to clearly show that failure to make lump sum settlement would be manifestly hard and unjust.

---

⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Damages** ⟷185(2), 221—**Evidence held to sustain finding that employee's injuries resulted in permanent incapacity to perform labor.**

Evidence *held* to warrant submission of issue whether injuries suffered by employee resulted in permanent incapacity to perform labor, and to sustain jury's affirmative finding thereon.

Appeal from District Court, Stephens County; Walter F. Schenck, Judge.

Action by Jim Tabor against the Texas Employers' Insurance Association, to set aside an award of the Industrial Board denying plaintiff any relief. Judgment for plaintiff, and defendant appeals. Affirmed.

Lawther, Pope, Leachman & Lawther, of Dallas, and Hickman & Bateman, of Breckenridge, for appellant.

W. R. Saunders, of Breckenridge, for appellee.

HIGGINS, J. This suit was brought by Tabor against the appellant to set aside the award of the Industrial Accident Board denying him any relief. It was alleged by the plaintiff that he was an employee of the Fulwiler Motor Company, which was a subscriber under the Workmen's Compensation Act, holding a policy of insurance issued by appellant, and upon February 10, 1924, he was injured in the course of his employment, which injuries totally and permanently incapacitated him to labor. By an amendment filed the day before the trial begun he asked for a lump settlement, alleging a failure to make such an award would result in manifest hardship and injustice to him and those, dependent upon him.

The defendant answered by general demurrer and denial.

The issues submitted and answers returned are as follows:

(1) "Were the injuries received by Jim Tabor on or about the 10th day of February, A. D. 1924, sustained while in the course of employment with the Fulwiler Motor Company? Answer: Yes."

(2) "Will the failure to pay the compensation, if any, in a lump sum, result in manifest hardship and injustice to plaintiff, Jim Tabor? Answer: Yes."

(3) "Did the injuries as received by Jim Tabor on or about February 10, 1924, result in permanent total incapacity to perform labor? Answer: Yes."

(4) "What was the average daily wage of Jim Tabor on or about February 10, A. D. 1924? Answer: $5."

Judgment was rendered in Tabor's favor for $5,581.09.

Error is first assigned to the overruling of a motion for a continuance, the ground of the motion being that the defendant was surprised by and unprepared to meet the allega-

tions contained in the amendment upon which was based the prayer for a lump sum settlement.

[1] By a long line of Supreme Court decisions the rule is established that the action of the trial court in overruling a motion for continuance cannot be reviewed unless a bill of exception is properly prepared and made a part of the record; that an exception noted in the order overruling the motion will not supply the place of such a bill. See cases cited in 7 Michie Digest, 101, 102. There is no bill in the record relating to the action of the court upon the motion, though in the order overruling the same appellant's exception is noted. In this condition of the record we cannot review the court's action in the premises. It may be said, however, that the controverting affidavit of appellee's counsel rebuts the allegation of surprise, and justifies the ruling upon the motion.

The subscriber, Fulwiler Motor Company, was an automobile dealer, engaged in business at Breckenridge in Stephens county. In the fall of 1923 the Motor Company sold a G. M. C. truck to Tabor & Myers, a partnership composed of appellee and W. M. Myers. The purchase was made by Myers in behalf of his firm and upon credit. A note was given for the purchase price, and mortgage given upon the truck to secure its payment. The mortgage contained the usual provision for the mortgagee to retake possession of the truck upon default in the payment of any installment of the purchase money, and that the mortgagor would pay all expenses incurred by retaking such possession. At that time Tabor & Myers were engaged in crushing and hauling rock for road construction purposes in Eastland county. The truck was taken to that county, and used in such work. On February 5, 1924, the partnership was dissolved by mutual agreement, Myers taking over all of its assets except a Ford truck, and assumed all of its debts. Upon or prior to such dissolution Tabor returned to Breckenridge. At that time an installment upon the purchase price of the G. M. C. truck was past due.

Tabor testified that a day or two before February 10, 1925, Mr. Fulwiler arranged with him to go after the car with R. V. Snaer, bookkeeper of the Fulwiler Motor Company. Mr. Snaer was to see Myers, obtain a payment upon the truck, and, failing to do so, retake possession thereof. Tabor's duty was to guide Snaer to the place where Myers and the truck were, and, if possession was taken, to drive the truck back to Breckenridge. The 10th was Sunday, and upon the morning of that date Snaer and Tabor drove to a point near Carbon where Myers had the truck. After a conversation between Snaer and Myers, the latter agreed to surrender the truck. Myers and Tabor got in it and went to Carbon where the bed of the truck was.

---

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Myers and Tabor put the bed on the truck, and it was surrendered by Myers to Tabor. The latter started with it to Breckenridge via Eastland. A short distance from Eastland the truck broke down, and Snaer, who was along in the car he had driven over, caused the truck to be towed to Eastland. It was necessary to obtain some parts for the truck, whereupon Snaer and Tabor started to Breckenridge to get them. Tabor was to take the parts back to Eastland and use same in repairing the car preparatory to driving it to Breckenridge. Upon the return trip to Breckenridge Snaer was driving the car they had started with that morning. A few miles from Breckenridge it turned over, crushing and breaking Tabor's leg. Tabor testified that Fulwiler agred to pay him the customary truck driver's wages while going after and returning with the truck, and Fulwiler instructed him to obey Snaer's orders on the trip. Snaer testified Tabor agreed to go after the truck in consideration of Fulwiler releasing him from liability on the Tabor & Myers note for the G. M. C. truck.

Fulwiler testified he arranged with Tabor to go with Snaer and get the truck, and agreed to pay him the reasonable value of his services. He denied that he agreed to release Tabor from liability on the note for the G. M. C. truck. Other facts in the case will be stated in the course of the opinion as may be necessary.

Error is assigned to the refusal of a peremptory instruction in appellant's favor upon the following grounds:

"(1) Because the uncontroverted evidence in the case shows that if there was any contract of employment between appellee and the Fulwiler Motor Company at all, it was a contract which was illegal, void, and unenforceable under the laws of this state, because it was a contract to perform work on Sunday, and the work was actually performed on Sunday in violation of the Penal Code of the state of Texas. There being no contract of employment between appellee and Fulwiler Motor Company, there was no relation of master and servant between them, and there should not have been any recovery by appellee under the Employers' Liability Act of the state of Texas.

"(2) Because appellee introduced no evidence of any notice of injury to the Texas Employers' Insurance Association or to the Fulwiler Motor Company within 30 days after the happening of such injury.

"(3) Because appellee introduced no evidence that he made claim for compensation on the Texas Employers' Insurance Association, the Fulwiler Motor Company, or the Industrial Accident Board within 6 months after the happening of such injury.

"(4) Because the uncontroverted evidence shows that the appellee was not an employee under the terms of the Employers' Liability Act, in that at the time of the alleged injury the appellee was engaged in an act which was not in the usual course, trade, profession, or occupation of the Fulwiler Motor Company.

"(5) Because the uncontroverted evidence

shows that appellee was not an employee of the Fulwiler Motor Company under the terms of the Employers' Liability Act, in that there was no contract for hire, express or implied, oral or written, between said appellee and said Fulwiler Motor Company, there being no consideration for such contract, appellee merely promising to do what he was already legally bound to do."

In support of the first ground, it is asserted that liability under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) arises upon contract; that a contract to perform labor on Sunday, which does not come within any of the exceptions enumerated in section 300 of the Penal Code, and such labor is performed on Sunday is illegal and void; wherefore, there was no contract of employment between Tabor and the Fulwiler Motor Company; he was not an employee of said company, and could not recover compensation for his injuries under the Compensation Act.

[2,3] The relation of employee, both at common law and under the Compensation Act, arises upon a contract express or implied. It is also well settled that an action cannot be maintained to enforce the contractual liability upon a contract to perform an act in violation of law. It was a purely contractual liability which was sought to be enforced in Osage Oil & Gas Co. v. Caulk (Tex. Civ. App.) 243 S. W. 551, and Publishers: Geo. Knapp & Co. v. Culbertson, 152 Mo. App. 147, 133 S. W. 55, cited by appellant. Both of these cases were to recover the compensation agreed to be paid for labor performed on Sunday in violation of law. But such is not the nature of the present action.

[4,5] Appellant's contention amounts to this: Because the contract between the Fulwiler Motor Company and Tabor and the service rendered in pursuance thereof was in violation of article 299 of the Penal Code, which forbids labor on Sunday, the relation of employer and employee did not exist between the parties, wherefore there is no liability upon its part as an insurer under the Compensation Act. This contention in our opinion is foreclosed against appellant by the ruling of Judge Stayton in Railway Co. v. Rider, 62 Tex. 267. In that case Rider and the engineer of a train were fellow servants. The former was injured through the latter's negligence, and sued to recover damages for the injuries sustained. The work the parties were engaged in at the time the accident occurred was being done on Sunday. The report of the case is somewhat meager, but it seems evident Rider sought to avoid the force of the fellow-servant doctrine upon the theory that the relation of fellow servants between himself and the engineer did not exist because they were performing labor in violation of the Sunday law. Judge Stayton said:

"That this was on Sunday did not change the relation which existed between the engineer on

the train and the plaintiff. They were fellow servants, nevertheless, in view of the rule which affects the question of master's liability, even if the work in which they were engaged was not such as the law permits to be done on that day."

The ruling means that, though the engineer and Rider were laboring on Sunday, they were nevertheless fellow servants of the same master, and the fellow-servant doctrine is applicable.

So, in the present case we see no reason why the relation of employer and employee did not exist between the Fulwiler Motor Company and Tabor even if Tabor was working in violation of the Sunday law.

This conclusion is strengthened by a consideration of the authorities on the question of the right of recovery by an employee who is injured through the negligence of his master while laboring in violation of the Sunday law. In Massachusetts and some of the other New England states, it was formerly held that one traveling upon the public highway on Sunday contrary to a law forbidding such travel could not recover for an injury caused by a negligent defect in the highway, upon the theory that he was guilty of contributory negligence in thus violating the law. Shearm. & Redf. on Neg. (6th Ed.) vol. 1, § 104, vol. 2, § 381, and 1 Cooley on Torts (3d Ed.) under the title, "Injury Sustained in Wrongdoing," beginning at page 263; 25 R. C. L. 1450. This doctrine has also been applied in Massachusetts and possibly in Ohio so as to bar the right of recovery by a servant against his master for an injury received while working upon Sunday contrary to law. But a different view is taken in Indiana and a number of other states. 2 Labatt on Master and Serv (2d Ed.) § 1240. See, also, 25 R. C. L. 1454; Cooley on Torts, supra. In a note at page 3384 of Labatt it is said:

"In Louisville, N. A. & C. R. Co. v. Frawley (1886) 110 Ind. 18, 9 N. E. 594, the following principle was formulated: The fact that one who sustains an injury by the negligent or wrongful act of another may have been, at the time of such injury, acting in disobedience of his collateral obligation to the state, which required of him the observance of the Sunday laws, will not prevent a recovery from one whose wrongful or negligent act or omission was the proximate cause of such injury. To same effect, see Louisville, N. A. & C. R. Co. v. Buck (1888) 116 Ind. 566, 2 L. R. A. 520, 9 Am. St. Rep. 883, 19 N. E. 453, where the court pointed out that as the servant's danger was the same on week days as on Sundays, it could not be said that this breach of the law was an efficient cause of, or contributed to, his injury."

The principle upon which recovery is allowed in such cases is thus stated by Judge Cooley:

"Where the violation of law is merely a condition and not a contributory cause of the injury, a recovery may be had." Cooley, supra.

So far as we are aware the question has never been passed upon by the courts of this state, but the great weight of authority and, as we think, the better view, is contrary to the Massachusetts doctrine. It has been often held in this state that negligence of a plaintiff because of a violation of a statute or ordinance will not bar his right of recovery in an action for personal injuries unless such negligence was a proximate cause of the injury (Keevil v. Ponsford [Tex. Civ. App.] 173 S. W. 518, and cases there cited), and we see no reason why the same rule should not apply in a personal injury suit at common law by an employee against his master, where the latter sets up that the servant was laboring in violation of the Sunday law. We think if the present action could be maintained at common law by Tabor against the Fulwiler Motor Company, the latter could not defend upon the ground that at the time Tabor was injured he was laboring in violation of the Sunday law, unless it was further shown that this was a proximate cause of the injury.

Under the Compensation Act, liabiilty to an injured employee is shifted from the subscriber to the insurer. The insurer stands upon no higher plane than the subscriber. The Compensation Act defines an employee to "mean every person in the service of another under any contract of hire," etc. This definition embraces Tabor, and his status as such is not affected by a violation of the Sunday law.

Another proposition advanced by appellant in this connection reads:

"The Employers' Liability Act does not cover employees (purported) employed in violation of the Penal Code or of the plain statutory prohibitions, or the Employers' Liability Act itself," citing the following cases: Waterman Lumber Co. v. Beatty (Tex. Civ. App.) 204 S. W. 448, affirmed in 110 Tex. 225, 218 S. W. 363; Galloway v. Lumbermen's Indemnity Exchange, 238 S. W. 646 (Commission of Appeals); Rogers v. Rogers, 70 Ind. App. 659, 122 N. E. 778; Kemp v. Lewis, 7 B. W. C. C. 422.

Kemp v. Lewis is not accessible. Rogers v. Rogers has no application. The other two cases hold that the Compensation Act does not apply to a minor employed in violation of article 1050, P. C. The ruling in these cases is based upon section 12i of the Compensation Act, which impliedly at least forbids the employment of a minor in any hazardous employment prohibited by any other statute. These cases have no application to the present action. The last quoted contention is overruled for the reason heretofore stated.

[6] With reference to the second and third grounds, the evidence abundantly shows the Fulwiler Motor Company had notice of the injury to Tabor immediately after it occurred, and within the 30-day period. The evidence also shows that within the 6-month period the appellant's agent was trying to ef-

fect a compromise with appellee for $100. This and other evidence in the record shows that a claim for compensation was made within the prescribed period. We do not understand that section 4a, part 2, of the act (article 5246—43, Complete Texas Statutes 1920) contemplates the formal service of notice of the injury and formal demand for compensation. Notice of the injury within 30 days and claim for compensation within 6 months, though informal, is sufficient.

[7] With reference to the fourth ground the "description of trade, business or mark" covered by the policy of insurance and "classification of risk" is thus described in the policy sued upon: "Automobile dealers, with or without gararge and auto garages."

The Compensation Act excepts from the definition of employee "one whose employment is not in the usual course of trade, business, profession, or occupation of his employer." It is a well-known fact that automobile dealers are accustomed to sell automobiles on credit, taking mortgages with the usual provision authorizing them to repossess the car upon default by the mortgagor in making payment. Retaking such possession is in the usual course of its business, for which reason this contention of appellant is without merit.

[8] The fifth ground is untenable. It may be conceded that under the mortgage given by Tabor & Myers the former was legally bound to reimburse the Fulwiler Motor Company for any expenses incurred in retaking possession of the truck, but the company employed Tabor to go with Snaer, find the truck, and drive it back. Tabor was not obligated to perform that service under the mortgage. The provision in the mortgage reads:

"The purchaser agrees to pay all costs, charges, expenses and disbursements, including 10 per cent. attorney's fee, incurred in taking possession of said motor vehicle (or vehicles), or in collecting any sums which may be due and owing to the seller, from the purchaser hereunder."

It might be that, since he was obligated to reimburse the company for any expenses incurred in that connection, the company, in a suit by Tabor to recover his wages for the service, might have pleaded it as a counterclaim. But that does not alter the fact that the agreement to pay Tabor for his services was based upon a valuable and valid consideration.

[9] It is asserted there is no evidence to show that a failure to award a lump sum settlement would result in manifest hardship and injustice to appellee, nor that his injuries resulted in permanent total incapacity to perform labor, for which reason the court erred in submitting these issues to the jury. The evidence is uncontradicted that Tabor is wholly without means, needs surgical attention, cannot read or write, dependent for a livelihood upon manual labor, with a dependent wife, six small children, and an aged mother. If this does not present a case where a failure to make a lump sum settlement would be manifestly hard and unjust, then it would be difficult to imagine a case of that nature.

[10] As to the other contention, the evidence abundantly shows that at the date of trial, nearly six months after the injury, he was totally incapacitated to labor. Dr. King, appellant's medical expert, so testified. Dr. Ramming testified to the same effect, and, further, that his condition was "permanent unless some effort is made to relieve it, if it can be done." Dr. Ramming further testified that by an operation and favorable outcome his capacity to some extent might be restored, and appellant suggests that Tabor should have had such an operation performed. But where is Tabor to get the money to have it performed? He already owes $300 for medical and hospital bills which he is unable to pay. Appellant has repudiated any obligation to him, and there is nothing in the record to suggest that he has or can get the money to have such an operation performed. The court did not err in submitting the issues indicated, and the evidence supports the jury's findings. This conclusion renders it unnecessary to consider some of the other assignments and propositions submitted by appellant.

The tenth assignment presents, at most, but harmless error, in view of the fact that the papers referred to were not read in evidence.

There are a number of other assignments and propositions presented in the brief. Some are but repetitions, in a different form, of the questions heretofore discussed. The relevancy of others is eliminated by our ruling upon the sufficiency of the evidence to support the findings made. All questions presented have been considered, and, in our opinion, no error of a reversible nature is shown by any of them.

The judgment is therefore affirmed.