TEXAS EMPLOYERS' INS. ASS'N v. PRICE.
(No. 1948.)

Court of Civil Appeals of Texas. El Paso.
July 11, 1927.

Rehearing Denied Sept. 5, 1927. Writ of Error Dismissed Nov. 16, 1927.

1. Master and servant ☞361—Employer held within Workmen's Compensation Act, regardless of whether he had employees within state at time of injury (Rev. St. 1925, art. 8306, § 2).

Employer *held* within scope of Texas Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), regardless of whether he had any one in his employment within state at time of injury, where he had Texas policy of insurance in force, and employee was injured in another state, notwithstanding Rev. St. 1925, art. 8306, § 2.

2. Master and servant ☞383—It is immaterial as between employee and insurer whether employer paid premium on compensation policy.

It is immaterial, so far as workman's compensation is concerned, as between employee and employer's insurer, whether employer paid premium on policy.

3. Master and servant ☞383—Provisions of compensation policy do not affect rights of injured employees (Workmen's Compensation Act).

Provisions of insurance policy, protecting employer from loss under Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), and its statement, warranties, and promises, do not affect rights of injured employees but only rights of subscriber and insurer inter esse.

4. Master and servant ☞383—Compensation insurer is bound by contract, as between it and employee, regardless of whether employer became subscriber entitled to benefits conferred by Compensation Act (Rev. St. 1925, art. 8306, § 2).

After insurer issued policy of compensation insurance to employer, and contracted to insure employees, it is bound by its contract as between it and employee under Rev. St. 1925, art. 8306, § 2, regardless of whether employer then or thereafter became subscriber, and entitled to benefits conferred on employers by Compensation Act.

5. Master and servant ☞369—Workman employed in one state and injured in another may recover under compensation laws of each (Workmen's Compensation Law, pt. I, § 14).

It is not contrary to public policy of state or interstate comity to allow injured employee, employed in one state and injured in another, to collect against separate insurers under Workmen's Compensation Laws of each state, under Workmen's Compensation Law, pt. 1, § 14 (Rev. St. 1925, art. 8306, § 14), in view of amount of compensation allowed, for, while double recovery is obnoxious to law, full recovery is one of its special concerns.

6. Master and servant ☞398—Injured employee held to have "good cause" for failure to file claim for compensation within statutory period (Rev. St. 1925, art. 8307, § 4a).

Evidence *held* sufficient to sustain finding that good cause existed for injured employee's failure to claim compensation within time stipulated by Rev. St. 1925, art. 8307, § 4a, where employee was confined to bed on account of injury more than a year, and was informed that his claim was being taken care of.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Cause.]

7. Master and servant ☞398—Notices and reports under Workmen's Compensation Law need not be formal.

Notices and reports called for by Texas Workmen's Compensation Law (Rev. St. 1925 arts. 8306–8309) need not be formal.

8. Master and servant ☞417(5)—On trial in compensation case, court is not bound by board's finding as to good cause for failure to file timely notice (Rev. St. 1925, art. 8307, § 4a).

On trial de novo in action to set aside award in workman's compensation case, trial court is not bound by finding of board as to showing of good cause for failure to file notice and claim before board within time set by Rev. St. 1925, art. 8307, § 4a.

9. Master and servant ☞385(I)—Salary of employees in similar employment during preceding year held immaterial in workman's compensation case.

In workman's compensation case, it was immaterial what salary of other employees of same class working substantially whole of immediate preceding year was, where injured employee had worked for employer for several years last preceding particular employment in which he was injured, and was receiving average wage of $42 per week at time of injury.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Master and servant** &#9638;&rarr;**385(14)—Awarding compensation for foot injury, exceeding amount specified for loss of foot, held not error (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—21; Rev. St. 1925, art. 8306, §§ 10, 11).**

In proceeding under Workmen's Compensation Act for compensation for foot injury, rendering of judgment in excess of amount provided by Vernon's Ann. Civ. St. Supp. 1918, art. 5246—21, for loss of foot, *held* not error; compensation being awarded under Rev. St. 1925, art. 8306, §§ 10, 11.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit to set aside a final ruling and decision denying compensation for injuries brought by Guy E. Price against the Texas Employers' Insurance Association. Judgment of the Court of Civil Appeals (291 S. W. 287) reversing judgment for plaintiff was reversed (296 S. W. 284), and the cause remanded to the Court of Civil Appeals for further proceeding. Judgment for plaintiff affirmed.

Application for writ of error dismissed, 300 S. W. 672.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

R. A. D. Morton, of El Paso, for appellee.

WALTHALL, J. A statement of the nature and result of this suit by this court will be found in the Southwestern Reporter, volume 291, at page 287, and a like statement by the Commission of Appeals, section A, by Judge W. R. Bishop, on June 4, 1927 (296 S. W. 284), to each of which we refer.

In our former disposition of the case we discussed only the question of jurisdiction of the district court under the Workmen's Compensation Act of this state, and the case is remanded to this court for consideration of "other assignments of error presented on appeal."

The first proposition going to the jurisdiction of the court was decided against appellant's contention by the Commission of Appeals in the opinion above referred to.

[1] It is insisted by appellant that, at the time of the employment of Price, Goetting was not within the Texas act, not then having any one in his employment in Texas. The record shows that Goetting, a resident of Texas, carried insurance with appellant under the Texas law, the policy dating June 1, 1923, and expiring one year thereafter. The record further shows that Price had been in the employ of Goetting in Texas for several years next preceding his arrangement to go to New Mexico, and that his work in New Mexico was not permanent but temporary; Price testifying that on the completion of the New Mexico work he was to return

to Texas. Now it is true, as insisted by appellant, that for a few days immediately before Price went to New Mexico to work for Goetting Price was not being paid a daily wage by Goetting. It seems that, while Price was in the general employment of Goetting, and Goetting, a month prior thereto, contemplated sending, and had engaged, Price to go to New Mexico on the roadwork there, and Price contemplated going, there were some ten days prior to January 1, 1924, when Price was not on Goetting's pay roll in Texas or in New Mexico, but that, on January 1st, and before leaving for New Mexico, Price was in Goetting's employ. Goetting testified:

"I wasn't carrying Mr. Price on my Texas pay roll when he was working in New Mexico. I had no pay roll in Texas. * * * No; I wasn't rendering any pay roll to the Texas Employers' on which to base a premium under this policy covering Mr. Price when I was up in New Mexico."

At that time Goetting had a policy of insurance with the United States Fidelity & Guaranty Company to cover the New Mexico construction work, in force at the time of the injury to Price. Price received a compensation for his injury under the New Mexico law from the United States Fidelity & Guaranty Company, and appellant insists that, under the above facts, briefly stated, Price should not be allowed to recover of appellant under the Texas law for the same injury.

The outstanding facts are that, while Price was an employee of Goetting in Texas, Goetting secured the policy of insurance involved here from appellant, and that, at the time of Price's injury, the time period of the policy had not expired. Under provision of our statute, an employee is entitled to compensation under the policy, "even though such injury was received outside of the state." At the time of the employment both Goetting and Price lived in Texas; they were each then in Texas. Goetting's headquarters, at the time of Price's employment, and for some years before, had been, and apparently than was, in Texas. Goetting testified that Price was hired to go to New Mexico a month before he started on the work there. His pay began before he went there. His pay was going on while he was doing nothing; did not hire him expressly for the New Mexico job. "He was in my employ at the time. * * * I was through in El Paso, and was contemplating a job in New Mexico, and I wanted to use him up there."

Under the facts stated in the record, and only briefly outlined here, we have concluded that Price, at the time of his injury, was a Texas employee under Goetting, and was under the protection of Goetting's Texas policy

---

&#9638;&rarr;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of insurance, if in fact Goetting had a Texas policy in force at that time.

Appellant submits that, at the time Price was employed for the New Mexico work, Goetting, not then having any one in his employment in Texas, was not within the Texas act, and refers us to section 2 of article 8306, R. S. 1925, providing that the law shall not apply to any person having in his employ less than three employees. It is insisted that on January 1, 1924, Goetting did not have any one employed in Texas, and that it is not disclosed that Goetting ever had as many as three employees in Texas at any one time in the past within the period of the policy. It is further insisted by appellant that Goetting did not pay any premium for this insurance.

The record shows beyond controversy the issuance of the Texas policy sued upon, issued by appellant to Goetting to be effective from June 1, 1923, for one year next thereafter. ·

[2, 3] Under Home Life & Accident Co. v. Orchard (Tex. Civ. App.) 227 S. W. 705 (707), it is immaterial as between Price and appellant whether Goetting paid the premium on the policy. The provisions of a compensation policy and its statement, warranties, and promises do not affect the rights of injured employees, but only the rights of the subscriber and the insurer inter esse. Sheek v. Texas Co. (Tex. Civ. App.) 286 S. W. 336.

[4] After appellant issued its policy of insurance to Goetting, as it had the right to do, and contracted to insure his employees, it is bound by its contract as between it and Goetting's employee, regardless of whether Goetting then or thereafter became a subscriber and entitled to the benefits conferred upon the employers by the Compensation Act. United States F. & G. Co. v. Summers (Tex. Civ. App.) 262 S. W. 247; Employers' Liability Assurance Corporation v. Light (Tex. Civ. App.) 275 S. W. 685. The statute (section 2, part 1, of the Compensation Act [article 8306, § 2, R. S. 1925]) provides that an employer of three or more, at the time of becoming a subscriber, remains a subscriber, although thereafter he may have less than three employees.

[5] The facts show that Goetting.had taken out a policy of insurance with the United States Fidelity & Guaranty Company for the protection of New Mexico employees, including Price, and, pursuant to the Compensation Act in force in that state, Price claimed and collected in full his New Mexico insurance under that policy. Appellant submits that Price, having voluntarily submitted himself to the jurisdiction of New Mexico law in the course of his employment in that state, should not be permitted to collect a second time for the same injury, and for that reason the trial judge should have directed a verdict for appellant. The Compensation Act of New Mexico (Laws 1917, c. 83) is found in the record, and section 5 of the act is copied in appellant's brief. That section provides that the act shall be construed as creating a new right· and special procedure for the enforcement of the same, and the rights and remedies provided in the act for workmen and other dependents coming under its terms on account of injuries suffered by accident arising out of and in the course of employment of such workmen shall be exclusive of all other rights and remedies of such workmen, at common law or otherwise, and that all other laws and parts of laws relating thereto, or providing damages for injuries, or under which the same are recoverable, otherwise than as in the act provided, in conflict with the act, shall not apply as to the employments, employers, and workmen in cases in which such employers and workmen are bound by the act.

We have found no case in this state in point on the question presented. If we view the question as presenting a waiver by Price of his rights to compensation under the Texas law, such would seem ineffectual to cause a waiver under the provision of section 14, part 1, of our Texas law, which provides that: ·

"No agreements by any employee to waive his rights to compensation under the law shall be valid."

The New Mexico law is elective, and any waiver of his rights to come under the New Mexico Compensation Law would seem to be no more inclusive of his rights under the Texas law than an agreement to waive which would not be effective, under section 14 above.

We think that insurance taken by an employer for the benefit of his employees against injuries from accident under the Compensation Law of New Mexico, in addition to the insurance under the Texas Compensation Law of this state, and to collect on each, is not contrary to any public policy of this state or interstate comity, as suggested by appellant. We have found no statutory inhibition in this state against such double insurance, nor have we found it to be such by the decision of the courts; while the liability under the Compensation Acts in either state is contractual, the scheme for compensation for injury suffered is more in the nature of a pension than a liability for breach of contract, or damages intact. The effort here in the instant suit is not to enforce the New Mexico Compensation Law. This suit is in a Texas court to enforce a Texas contract under a Texas statute.

Pickering v. Industrial Commission of Utah, 59 Utah, 35, 201 P. 1029, is a case similar to this both as to the facts and as to the Compensation Law of Utah (Comp. Laws 1917, §§ 3061–3165), in that Pickering was a workman within the state of Utah, and em-

ployed to work in the state of Colorado, where he was injured. Pickering & Bros. carried compensation insurance in both states. The Utah Industrial Act provided that a workman hired in that state, receiving personal injury by accident arising out of and in the course of such employment, shall be entitled to compensation according to the law of Utah, though the injury was received outside that state. The state commission of Utah refused compensation under the statute of that state. While the case does not state that Pickering had received compensation under the Colorado Compensation Law (Laws 1919, p. 700), the Supreme Court allowed an award in Utah, although the employee was insured also in Colorado.

It seems to us that it is not intended by the Compensation Laws of either Texas or New Mexico to give full compensation for injuries received. Our statute limits the compensation to 60 per cent. of the weekly earnings, and in no event can more than $20 per week be recovered, while the New Mexico law limits the recovery to 50 per cent. of the weekly earnings, and provides a maximum recovery of $12 per week. The evidence here is that Price was receiving $7 per day, and at times as much as $60 per week for six days work, $10 per week less than the average maximum amounts allowed by both states, and regardless of the condition for service in the future.

Now, as suggested by appellant, a double recovery is obnoxious to the law, but it is also insisted by appellee that a full recovery is not only obnoxious to the law, but is one of its special concerns. We cannot see how it can be a concern of appellant that Goetting had taken out compensation insurance for his employees in both states, and that Price had received compensation under the New Mexico insurance policy. Without discussing the cases, we refer to Missouri P. R. Co. v. Jarrarad, 65 Tex. 566, and Dohman et al. v. Texas Evployers' Ins. Assn. (Tex. Civ. App.) 285 S. W. 848.

[6] Appellant insists that it was error to render judgment for Price for any sum, because the evidence shows that he was injured on February 4, 1924, and that he did not claim compensation for such injury under the law of Texas for more than six months thereafter, and, no good cause having been shown for waiving strict compliance with the statutory requirements for filing such claim before the Industrial Accident Board, it was barred by the provision of section 4a of part 2 of the Employers' Liability Act.

Article 5246—43, title 77, Vernon's Tex. Civ. Statutes (section 4a, art. 8307, R. S. 1925), provides that, unless the association or subscriber shall have notice of the injury, no proceeding for compensation for injury under the act shall be maintained, unless a no-

tice of the injury shall have been given to the association or subscriber within 30 days after the happening thereof, and "unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity." Provided that "for good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

The part of the statute within the quotation above is the part invoked by appellant. No question is made but that the association and the subscriber (Goetting) had notice of the injury within the time provided by the statute.

The issues as to notice of the injury and the claim for compensation made, and as to the mental or physical incapacity of Price within six months after the removal of such physical or mental incapacity, and as to good cause for not presenting such claim within six months, and as to the claim being meritorious, were not presented to the jury, nor requested to be presented.

The trial court in the judgment recited that:

"It appears to the court, and the court finds and adjudges, that this is a meritorious case in which good cause has been shown for waiving strict compliance by plaintiff with the provisions of section 4a of chapter 179 of the General Laws of the Thirty-Third Legislature as amended, and that defendant herein has in no way been prejudiced or suffered any injury by the delay in giving notice and filing of claim."

The court further found the subscriber, Goetting, had actual notice of the injury to Price on February 5, 1924.

The statute does not define nor otherwise state what facts shall constitute "good cause" sufficient to justify the board or the trial court in waiving the strict compliance with the statute as to the filing of the claim before the board. The duty to make the claim within the time was no doubt imposed upon the employee in order that the employer and the insurer might know of the injury within the time, and make such investigation as they might deem necessary to their interests. Here the trial judge found and stated in his judgment that good cause existed. The evidence is amply sufficient to sustain the finding. Price was confined to his bed on account of his injuries for more than a year next after the injury in New Mexico and Texas, after returning here. Goetting told Price shortly after the injuries that the notices had been given. From the evidence it is manifest that Price, having been injured in New Mexico, caused some confusion as to his

right to compensation under the Texas law, and the steps to be taken.

Price testified:

That right after he came from New Mexico, and was going to the doctor's office in a taxi, he saw and talked with Mr. McCabe (appellant's agent, who had solicited the Texas insurance of Goetting). That McCabe said he knew of the accident, had been talking with Goetting, and, when Price asked him what he was going to do about it, replied:

"I am going to take care of it for you. I will look out for that, Price."

That he thought between McCabe and Goetting "they would fix that up," and for that reason he "never bothered about notifying the board" until long after when he saw nothing was being done, when he wrote the board. Said the board advised him that, as he was injured in New Mexico, he was out of their jurisdiction. Price then consulted an attorney, and, when he was able to get out, he "got busy." Price's informal letters to the board notifying the board of his injuries are in the record, and to which we refer without quoting them. That before then he was not able, and thought McCabe and Goetting were looking after his insurance. It is not made to appear that the insurer had been prejudiced in any way on account of failure to notify the board within the prescribed time, and the courts so found.

[7, 8] Notices and reports called for by the Texas law need not be formal. Texas Employers' Ins. Ass'n v. Tabor (Tex. Civ. App.) 274 S. W. 309. On the trial de novo the trial court is not bound by the finding of the board as to good cause shown as to notice and filing the claim before the board. Watts et al. v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 264 S. W. 186; Home L. & A. Co. v. Orchard (Tex. Civ. App.) 227 S. W. 705.

[9] It is insisted that the requested directed verdict in appellant's favor should have been given, as it is insisted the pleadings and evidence affirmatively show that Price had not worked at the employment in which he was injured during substantially the whole of the year immediately preceding his injury, and that both the pleading and evidence fail to show what was the work or salary an employee of the same class working the whole of the immediate preceding year earned in the same or similar employment in the same or neighboring place. Price pleaded that, on or about January 1st, he entered into the contract of employment at El Paso, Tex., with Goetting here and now a resident of Texas, to work on a road job in New Mexico as walking boss and mechanic; that, at the time of his injury, he was being paid $7 per day; that he had been working for Goetting, a general contractor, for about five years, doing structural iron and steeple jack work; and that, when doing such work, he made from $8

to $10 per day, and that he had not abandoned his previous occupation of steeple jack and structural iron worker, but undertook the job as walking boss on the road construction job as an accommodation to Goetting; and that he is entitled to compensation at the rate of $20 per week for 401 weeks.

Goetting testified:

He was to pay Price $7 per day, straight time; made the agreement in El Paso. "Price went to New Mexico on my job. He was to do the gang work; that is, run the lines on the road, be foreman, and anything that happened mechanically to fix it himself." Price was at work at the time he hired him to go to New Mexico on that job, on January 1, 1924. We had just finished the Peake job. He finished that, and was through. "He was hired to go into New Mexico a month before we started on this job up there." His pay began before he went up into New Mexico. "I was paying him $7 a day. Hired him by the day. Hired him every day." Did not hire him expressly for this job. He was in my employ at the time; was through in El Paso, and wanted to use him up there.

Price testified:

Had worked for Goetting about five years before January 1, 1924; did structural iron work for Goetting; finished up the Peake-Hagedon Undertaking Establishment; had worked for Goetting as mechanic also. He wanted me to go to New Mexico, and, having worked for him so long, felt like he ought to go; was to be walking boss and all around mechanic in camp, looking after the labor and all breakdowns in machines, wagons, etc. Before his injury his wages were $48 to $60 per week.

On special issues submitted the jury found that Price's average weekly wages were $42 for work in which he was actually engaged at the time of his injury.

We think it a reasonable and fair construction of the evidence that Price had worked for Goetting for substantially several years next preceding the New Mexico employment and on the New Mexico employment where he was injured at the average wage of $42 per week, as found by the jury.

If we are not in error in our observation last above expressed, it would seem to follow that it would be immaterial what the wage or salary of other employees of the same class working substantially the whole of such immediate preceding year earned in the same or similar employment.

[10] Error is claimed in rendering judgment for any amount in excess of $815, because the evidence shows that Price's injuries were confined to his foot and leg below the knee, and his physical condition is better than it would have been had he lost his entire foot, and the Compensation Act provides that the maximum compensation for the loss of the foot shall be 125 weeks, at not exceeding $20 per week, and, as the United States Fidelity & Guaranty Company has

paid Price for the same injury $1,685, the judgment should not exceed $815.

The jury found that Price was totally disabled 18 months on account of the injuries complained of; that he will be partially permanently incapacitated for work after his total disability has ended—the evidence sustains each of the findings; that his average weekly wages before his injuries complained of were $42; and that his average weekly wage earning capacity during the existence of his partial incapacity is $10.

Dr. Phelix P. Miller, a witness for Price, after describing Price's injury, which he described as "a fracture above the ankle of the left foot," and the result therefrom, said:

"Mr. Price isn't as bad off as if he had lost his whole foot."

Dr. W. L. Brown, a witness for Price, after describing Price's injury as "a compound fracture of his leg, that is, the fracture of both bones of his left leg about at the junction of the middle and lower third," and the results, said:

"He is not as bad off now as though he had lost his left foot entirely above the ankle; it is lots better than an artificial limb."

The judgment entered is lengthy and for lump sums, but we will state briefly a summary of the judgment, so that the basis for the aggregate sum can better be seen. On the jury's finding of total disability for 18 months from February 4, 1924, and his average weekly wages of $42, the court adjudged that plaintiff would be entitled to recover at the rate of $20 per week from February 12, 1924, for 77 weeks ($1,540) and interest on the weekly payments as they accrued, $144.32; that he would be entitled to recover 60 per cent. of $32 per week, or $19.20 per week, for 300 weeks from August 4, 1925, of which 37 weeks had passed up to April 20, 1926, and entitled to a lump sum judgment for $700 and $13.30 interest; and entitled to judgment for 263 weeks at $19.20, payable weekly, beginning with April 27, 1926, a total of $5,049.60; and entered judgment for $2,398.02, and interest from date of judgment; further judgment for $19.20 per week as payments accrue for 263 weeks beginning April 27, 1926. Appellant assumes that under the judgment as rendered its total liability is $7,447.62.

The only feature we think to consider under this proposition is whether Price's recovery should have been based on 60 per cent. of his average weekly wages during 125 weeks, as contended under the proposition. We have considered the payment under the New Mexico policy under another proposition. As stated in section 12, c. 177, Gen. Laws 38 Leg. 1923, p. 387, amending Workmen's Compensation Law, now article 5246, 21 V. S. Tex.

Civ. Stat. 1918 Supp., and enumerating injuries in the schedule, and reading:

"For the loss of a foot sixty per cent. of the average weekly wages during one hundred and twenty-five weeks."

It will be observed, however, as suggested by appellee, that the portion of section 12 invoked by appellant does not make any reference to incapacity to work, but provides certain compensation for the total loss of the foot and certain specified members of the body, and the total use thereof, and refers to either of such losses as cases of permanent partial incapacity. Texas Employers' Ins. Ass'n v. Moreno, 277 S. W. 85, in which a full discussion of the application of section 12 is made by Judge Powell of the Commission of Appeals. The judgment evidently was rendered under sections 10 and 11 of the act above referred to; said sections now being sections 10 and 11 of article 8306, Rev. Civ. Stat. 1925. It will be observed that said sections 10 and 11 as they now exist are contained in the original Compensation Act of 1913 (chapter 179), as was also section 12, changed somewhat by the act of 1917 (chapter 103, p. 269), which with minor amendments is still the law. An analysis of section 12 satisfies us that it does not apply to the facts of the instant case where the specific member is neither lost nor its use is totally lost. Maryland Casualty Co. v. Ferguson (Tex. Civ. App.) 252 S. W. 854; General Accident F. & L. Ins. Corporation v. Bundren (Tex. Civ. App.) 274 S. W. 671, and affirmed (Tex. Com. App.) 283 S. W. 491; Lumbermen's Reciprocal Ass'n v. Anders et al. (Tex. Civ. App.) 292 S. W. 265.

We have concluded that the court was not in error in applying sections 10 and 11 in the judgment to the facts of this case.

Finding no reversible error, the case is affirmed.