## LLOYDS CASUALTY CO. v. MEREDITH.

### No. 2382.

Court of Civil Appeals of Texas. Beaumont.

Oct. 26, 1933.

Rehearing Denied Nov. 1, 1933.

1052

Smith, Smith & Boyd, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellee.

WALKER, Chief Justice.

This was an action for compensation under the provisions of our Workmen's Compensation Act, filed by appellee, Mrs. May Meredith, against appellant, Lloyds Casualty Company, as an appeal from an adverse award of the Industrial Accident Board, with Joe Salhab, doing business in the city of Beaumont as the operator of a restaurant under the business name of White Kitchen Café, as the employer, appellee, May Meredith, one of Salhab's waitresses, as employee, and appellant, Lloyds Casualty Company, as the insurance carrier. It was the contention of appellee that on May 9, 1930, while in the due course of her employment and in the due discharge of her duties as a waitress, she accidentally slipped and fell upon the concrete floor of the kitchen of the café "with suddenness and great force, thereby seriously and permanently injuring her spine and the nerves of her spinal column and the nerves running from and to said spinal column (the exact nature of said injury being unknown to plaintiff, for which reason she is unable to plead the same more definitely) as a result of which she has suffered continuous pain and general weakness of such a nature as to be unable to work and earn money from the date of said injury up to the present time." On these allegations of injury she prayed for compensation as for total permanent incapacity and in the alternative for partial incapacity. The answer of appellant was sufficient in all respects to support its propositions of error advanced on this appeal. Upon the verdict of a jury appellant was given judgment for permanent partial incapacity for three hundred weeks at the rate of $20 per week.

█ By its first four propositions appellant complains that the trial court erred in refusing to sustain its pleas in abatement and of want of jurisdiction of the trial court. The facts under these propositions are as follows: Appellee was injured in the manner pleaded by her on May 9, 1930, at which time she was a married woman. The Industrial Accident Board made its final award in her claim on April 7, 1931. In due time, on May 12, 1931, she filed her petition in the district court of Jefferson county, as an appeal from that award. Though a married woman, her husband was in no way a party to the proceedings before the Industrial Accident Board, nor did appellee make him a party herein, but described herself in her original petition as a feme sole. On August 29, 1931, appellee's husband was awarded a divorce from her on allegations of adultery. She knew of these allegations, but made no denial thereof, and, in fact, made no defense to the divorce suit. On the 13th day of November, 1931, her divorced husband assigned to appellee, by an instrument in writing, all his right, title, and claim in and to her cause of action, accruing to him as part of their community estate. Appellee was married in 1928, and shortly after the marriage her husband abandoned her and never afterwards made any contribution to her support nor claim of any kind to her wages. This case was tried on March 9, 1932. On March 7, 1932, appellee filed her motion, alleging generally the facts as stated above, and prayed for an order of the court, permitting her to prosecute her suit as a feme sole, which was in all things granted. Appellant filed its plea in abatement and to the jurisdiction of the court, based on the facts above stated, advancing the propositions that the husband was a necessary party to appellee's original petition to give the court jurisdiction of her appeal from the award of the Industrial Accident Board and, because he was not a party to the original proceeding, the court had no jurisdiction of her cause of action. As we construe the opinion of the Commission of Appeals in Jago v. Indemnity Ins. Co. of North America, 120 Tex. 204, 36 S.W.(2d) 980, appellant's contention was squarely before the court and affirmatively denied. The writer's personal views on this proposition were expressed in his dissenting opinion in the Jago Case, 12 S.W.(2d) 817, when it was pending before us. The opinion of the Commission of Appeals denied his theory of the law.

█ Though appellee was injured on May 9, 1930, her claim was not filed with the Industrial Accident Board until the 26th of December, 1930. She pleaded "good cause," as defined by this court in Consolidated Underwriters v. Seale (Tex. Civ. App.) 237 S. W. 642, as an excuse for not filing her claim within the statutory period of six months. By its eighth proposition appellant asserts that the evidence was insufficient to raise the issue of "good cause"; by the ninth proposition, that the verdict of the jury on that issue was against the great and overwhelming weight of the testimony; and by the tenth proposition, that, on the evidence on that issue, the trial court was without jurisdiction to entertain appellee's cause of action. These propositions are overruled. The following excerpts from appellee's brief, which we adopt as a fair statement of her theory of

the facts, fully support the jury's verdict and the jurisdiction of the court on the issue of "good cause":

"From the cross examination of Mr. Joe Salhab, employer of plaintiff, it is evident that he knew of the alleged injury of May 9, 1930, and immediately thereafter informed plaintiff that Joe Lederer was agent for the defendant, Lloyds Casualty Company, and that said company was carrying compensation for him (Joe Salhab) at that time.

"Plaintiff testified that she went to the office of Mr. Joe Lederer within less than thirty days after the date of said injury and that Mr. Joe Lederer fixed up some papers for her and told her that he would attend to all the matters involved in her behalf and plaintiff further testified that she relied upon said promises of Mr. Joe Lederer.

"Plaintiff further testified that between May 9, 1930, and December 22, 1930, (the date upon which plaintiff's claim for compensation was filed) that the condition of her health with respect to being able to attend to her business was bad and that she was in bed most of the time."

The bad health of appellee, the fact that her employer knew of her injury immediately after it was received, her visit to the office of appellant's agent, Mr. Lederer, and the promises made by him to her, as testified to by her, and her reliance on his promises, bring this case clearly within the rule announced by the following authorities: Texas Indemnity Ins. Co. v. Holloway (Tex. Civ. App.) 30 S.W. (2d) 921; Home Life & Accident Co. v. Orchard (Tex. Civ. App.) 227 S. W. 705; Texas Employers' Ins. Ass'n v. Price (Tex. Civ. App.) 300 S. W. 667, writ dismissed 117 Tex. 173, 300 S. W. 672; Texas Employers' Ins. Ass'n v. Fricker (Tex. Civ. App.) 16 S.W.(2d) 390.

We have examined with extreme care the testimony on the issue of the extent of appellee's injuries, and believe it is sufficient to support the verdict of permanent partial incapacity. It would serve no useful purpose to review this testimony in detail. Appellant's testimony strongly controverted the issue, and the jury would have been entirely justified in accepting its theory of the facts; that is, in believing its witnesses as to the extent of appellee's injuries. But the issue was for the jury; and as it clearly has support in the testimony introduced by appellee, we would not be justified in setting aside the verdict. On this issue the court did not err in excluding the following cross-examination of appellee:

"Q. Last September you were injured in another portion of your body, weren't you? Your hand or your— A. I had dislocation of the finger, but I don't know what month it was.

"Q. How did that dislocation come about?

"Mr. Hart: Well, we object to that; we are not seeking anything for—we only pled this one thing; nothing pled about her finger, Your Honor, or teeth, either.

"Mr. Boyd: We have her on cross.

"The Court: Objection sustained.

"Mr. Boyd: Note our exception."

Appellee made no claim for the injury to her finger, either by her pleadings or by her evidence, and there is no suggestion that the injury to her finger contributed in the least to the disability resulting from the injuries received on May 9, 1930, upon which she based her cause of action. This discussion overrules appellant's eighteenth and nineteenth propositions.

As a basis for computing her average weekly wages, appellee pleaded that she received a regular salary of $15 a week from her employer and $35 per week in addition thereto as tips from her patrons. The jury found these issues as pleaded by her. The jury also found the following issues: (a) That there was an agreement between the employees and their employers in the restaurant business in the city of Beaumont, substantially the whole of the year preceding the date of appellee's injury, "that the tips, if any, which said employees received from the patrons of their said employers, were to be paid and did make part of their compensation or wages for doing such work"; (b) that there was an agreement between appellee and her employer that tips, if any, which she received from the patrons of the café were to be paid and did make up part of her compensation or wages; (c) that there was a general custom throughout Jefferson county to the effect that tips and gratuities, received by waitresses from patrons of cafés, were to become and constitute a part of the wages of such waitresses; and, (d) that such custom was so general and well known that appellant must have known or learned thereof in the exercise of ordinary care. By its fourteenth, fifteenth, sixteenth, and seventeenth propositions appellant asserts that these findings of the jury are without support in the evidence and, alternatively, so against the great weight and preponderance of the evidence as to be without reasonable support. We have examined the testimony on each of these issues, and it is our conclusion that the verdict of the jury thereon has abundant support.

By its fifth, sixth, seventh, eleventh, and twelfth propositions appellant asserts that tips received by appellee, on the facts found by the jury, as stated above, did not constitute a part of her average weekly wages and cannot be considered by the court in estimating the average weekly wage. This contention is denied. Subsection 4, of section 1 of article 8309 of our Workmen's Compensation Act provides that the average

weekly wages of an employee shall consist not only of the regular salary or wages paid, but shall also "include the market value of board, lodging, laundry, fuel, and other advantage which can be estimated in money, which the employee receives from the employer as part of his remuneration." The language, "other advantage which can be estimated in money," is broad enough to include tips. The authorities generally, on the facts found by the jury in this case, sustain the proposition that tips should be considered in estimating the employee's average weekly wage. Schneider's Workmen's Compensation Law (2d Ed.) vol. 2, § 440, p. 1513; 28 R. C. L. Permanent Sup. § 108; Gross' Case, 132 Me. 59, 166 A. 55 (May 1933); Sloat v. Rochester Taxicab Co., 177 App. Div. 57, 163 N. Y. S. 904; Bryant v. Pullman Co., 188 App. Div. 311, 177 N. Y. S. 488; Re Ethel Powers Case, 275 Mass. 515, 176 N. E. 621, 75 A. L. R. 1220.

██ The jury found that appellee's average weekly wages for the year immediately preceding the date of her injury, including her tips, was $50 per week, and that her average weekly wages, since her injury, was $15 per week; that is, that her weekly earning capacity during the existence of the partial incapacity was only $15 per week. The jury further found that appellee's percentage of partial disability was 50 per cent. By the verdict of the jury, it appears that the difference between appellee's average weekly wages, before her injury and after her injury, was $35 per week, and on this calculation the court awarded her compensation at the rate of $20 per week, ignoring the finding that her partial disability was 50 per cent. By its thirteenth proposition appellant asserts that an irreconcilable conflict exists between the findings of the percentage of her disability and the difference in her earning capacity before the accident and after the accident. The contention is further made that, if no conflict exists, appellee's compensation should be limited to 60 per cent. of 50 per cent. of her earning capacity; that is, to $15 per week. These contentions are overruled. The finding on the issue of percentage of incapacity was immaterial, on the character of injury involved in this case. The measure of appellee's compensation, on the facts of her injury, is controlled by section 11 of article 8306 of the Workmen's Compensation Act, which reads as follows: "While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent. of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than $20.00 per week."

The following authorities clearly sustain this construction of the quoted section, as applied to partial, general incapacity. Texas Employers' Ins. Ass'n v. Moreno (Tex. Com. App.) 277 S. W. 84; Texas Employers' Ins. Ass'n v. Moreno (Tex. Civ. App.) 260 S. W. 283; Texas Employers' Ins. Ass'n v. Price (Tex. Civ. App.) 300 S. W. 667, writ dismissed 117 Tex. 173, 300 S. W. 672; General Accident Fire & Life Assur. Corp. v. Bundren (Tex. Civ. App.) 274 S. W. 671; Millers' Indemnity Underwriters v. Cahal (Tex. Civ. App.) 257 S. W. 957.

For the reasons stated, the judgment of the lower court is in all things affirmed.