Johnnie L. APPLEGATE, Appellant,

v.

The HOME INDEMNITY COMPANY, Appellee.

No. 9311.

Court of Appeals of Texas, Texarkana.

Nov. 13, 1985.

Rehearing Denied Dec. 27, 1985.

Kenneth Johnson, Charles E. Perry, Johnson, Balch & Associates, Wichita Falls, for appellant.

Dennis G. Black, Mike A. Hatchell, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Tyler, for appellee.

GRANT, Justice.

Johnny Applegate appeals from a judgment based upon a jury verdict involving his workers' compensation claim for a low back injury sustained while stocking at Safeway. The jury found that Applegate was injured in the course and scope of his employment on March 14, 1983, in Mount Pleasant, Titus County, Texas. The jury further found that Safeway Stores, Inc. did not have notice of the injury within thirty days, as required by statute, but that Applegate believed that his injury was not job-related during that time period and that this belief caused him to delay giving notice. However, the jury determined under the prudent-person test that his belief was not good cause for the delay. The jury also found that Appelgate suffers partial incapacity which began March 15, 1983, and will continue until March 15, 1986, and that he has an average weekly earning capacity of $200.00. Judgment was entered ordering that Applegate take nothing from Safeway's carrier, Home Indemnity Company.

Applegate presents three points of error: ·(1) the jury's failure to find good cause for delay in giving notice was against the great weight and preponderance of the evidence; (2) the jury's failure to find good cause in its answer to Special Issue 8 conflicted with answers finding Applegate believed the injury not to be job-related and that such a belief caused him to delay in giving notice; and (3) that no evidence or insufficient evidence exists to support the jury's answers to special issues regarding partial incapacity and average weekly earning capacity.

While working on March 14, Applegate said, "I felt a pull in my back," but he "thought that was a normal occurrence from lifting." Later on in the evening, his legs started bothering him and the condition gradually became worse. He told his supervisor that he had possibly pulled something and was going to the doctor. He was hospitalized locally for two weeks, and then he went to Shreveport, Louisiana, where he was tested and again hospitalized for another two weeks. He testified that the treatment he received there did not help his condition. He then went to Dallas to see Dr. David K. Selby, who placed him in the hospital where discogram and EMG tests were run. The doctor diagnosed Applegate as having nerve root irritation and a congenital condition called spina bifida. Dr. Selby performed surgery, taking bone from Applegate's right hip and fusing the vertebrae involved in the injury.

During the course of the medical treatment, Applegate filled out a number of forms stating that the injury was not job-related. Approximately three weeks after the surgery, Applegate gave notice that he was claiming a job-related injury.

■ No conflict exists between the jury's findings to Special Issues 6 and 7

and Special Issue 8.[1] Issues 6 and 7 deal with a subjective standard as to Applegate's personal belief. Issue 8 deals with what a prudent person would have done under the same or similar circumstances.

Tex.Rev.Civ.Stat.Ann. art. 8307, § 4a (Vernon Supp.1985), sets out the thirty-day notice requirement, and further provides, "For good cause the [Industrial Accident] Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice,...." Although the statute refers to the Board, Texas courts have long held that on trial de novo, the court is not bound by the Board's finding of good cause. *Texas Employers' Ins. Ass'n v. Price,* 300 S.W. 667 (Tex.Civ.App.-El Paso), *writ dism'd per curiam,* 117 Tex. 173, 300 S.W. 672 (1927). Satisfaction of the reasonable man standard is a mixed question of law and fact to be determined by the jury. *Texas Casualty Ins. Co. v. Beasley,* 391 S.W.2d 33 (Tex.1965), *cert. denied,* 382 U.S. 994, 86 S.Ct. 576, 15 L.Ed.2d 480 (1966).

The prudent-person test has been applied in defining good cause as far back as 1922. *Consolidated Underwriters v. Seale,* 237 S.W. 642 (Tex.Civ.App.-Beaumont 1922, writ dism'd). The statute does not define "good cause," but the test laid down by the courts is whether the same degree of diligence was used as that of an ordinary prudent person similarly situated. *Traders & General Ins. Co. v. Jaques,* 131 S.W.2d 133 (Tex.Civ.App.—Austin 1939, writ dism'd judgmt cor.).

The purpose of this section of the Workers' Compensation Act is to give the insurer an opportunity to immediately investigate the facts surrounding the injury. *De-Anda v. Home Ins. Co.,* 618 S.W.2d 529 (Tex.1980); *Texas Employers' Ins. Ass'n v. Price,* supra. Yet, the test, well-established by precedents, is not whether the insurer was harmed by the delay, but rather whether or not the injured worker was prudent in his beliefs that caused the delay. Such a test has the effect of punishing a worker for his poor judgment or ignorance, even though no harm resulted from his inaction.

Nevertheless, this Court is bound to abide by the jury's finding by numerous precedents unless the jury's finding is against the great weight and preponderance of the evidence and reasonable minds could not differ as to the conclusion to be derived therefrom. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The record indicates that the injury was not open and visible to Applegate, and its severity and true character was determined only by technical and scientific examinations by medical experts. *Hawkins v. Safety Casualty Co.,* 146 Tex. 381, 207 S.W.2d 370 (1948). Furthermore, Applegate was not medically trained to recognize the causal connection between the pulling sensation in his back and the problems with his legs. He prudently consulted physicians until he determined the causation. *Allstate Ins. Co. v. Maines,* 468 S.W.2d 496 (Tex.Civ.App.-Houston [14th Dist.] 1971, no writ).

However, the record does not reveal when Applegate first received a medical

---

1. Special Issues No. 6, 7, and 8 are as follows:

6. Do you find from a preponderance of the evidence that within thirty (30) days from the date of injury, Plaintiff believed that his injury was not job related?

Answer "We do" or "We do not"

6. *We do*

If you have answered Issue No. 6 "We do," then answer Issue No. 7; otherwise do not answer Issue No. 7.

7. Do you find from a preponderance of the evidence that such belief caused Plaintiff to delay in giving notice to Safeway of his injury until such notice was given?

Answer "We do" or "We do not"

7. *We do*

If you have answered Issue No. 7 "We do," then answer Issue No. 8; otherwise do not answer Issue No. 8.

8. Do you find from a preponderance of the evidence that such belief was good cause for his delay in filing the notice for such period of time?

A person has "good cause" for delay in filing notice when he has prosecuted his notice with such diligence as an ordinarily prudent person would have used under the same or similar circumstances.

8. *No*

diagnosis concerning the nature of his injury. The only testimony in the record as to what Applegate learned from medical sources prior to going to Dallas is as follows:

Q   All right.  In fact you have heard the deposition testimony of Dr. Selby, did you know that you had a congenital back deformity?

A   No sir.  Not until I had—was told in Shreveport.

Q   You learned that in Shreveport?

A   Yes, sir.

Applegate's testimony about the information he obtained in Dallas tends to establish that his reason for not giving notice was not related to his lack of knowledge of his injury, but rather to his lack of knowledge of workers' compensation.

Q   Okay.  Did you subsequently after filling all these forms out decide that this might have been a job related injury?

A   From—

Q   Did you decide that?

A   Yes, sir.

Q   All right.  And how did you come to that conclusion?

A   From people that I had talked to there in the hospital that has had dealings with this type of stuff, this type of claims and they said, "That you probably—possibly had a claim for Workman's (sic) Comp., that that should have been carried on Workman's (sic) Comp."

Q   And at that time it wasn't being carried on—

A   No.

Q   Did you think it was?

A   Not really because I didn't know what constituted a Workman's (sic) Comp. claim.

    . . . .

Q   That's what you are saying now, Johnnie, but we have got to look, the jury is going to go back there and they are going to see Defendant's Exhibit Number One, they are going to read Section 10, "Not related to an accident or employment", and they are going to

know that you gave that information to that computer in Dallas.

A   Yes, sir.

Q   And they want to know why you did that.

A   At that time I wasn't for sure what would—would be considered as a job related injury.

    . . . .

Q   So the jury might know, Johnnie, did you ever come to—to the conclusion in your own mind that this was a job related injury under the Texas Worker's Compensation statute?

A   Yes, sir.  Approximately in June of—

Q   How did you happen to come to that conclusion?

A   From other people that was there in the hospital that had, you know, similar injuries and I—as mind.  (sic)

Q   And what did they tell you?

A   That I could probably have a claim on Workman's (sic) Comp., they wouldn't know for sure but I needed to get a lawyer to determine whether I had a claim or not.

Q   All right.  And that's what you did?

A   Yes, sir.

Q   All right.  Is there any other reason that you can think or that you can tell the jury why you filled these forms out originally saying it wasn't job related?

A   No, sir.

Q   In other words, it's just because you were mistaken as to what Workman's (sic) Compensation was?

A   Yes.

Texas courts have consistently held that an employee's ignorance of provisions of the Workers' Compensation Act does not constitute "good cause" for giving notice of injury or filing a claim with the Board. *Texas Employers' Ins. Ass'n v. Latcholia,* 154 S.W.2d 146 (Tex.Civ.App.—Beaumont 1941), *rev'd on other grounds,* 140 Tex. 231, 167 S.W.2d 164 (1942).

■  The record shows that Applegate had never had any problems with his back that had caused him to complain of back pain or to see a doctor prior to the injury in

question. He felt the pulling and twisting sensation in his lower back on the same night that his problems began. He called his mother to pick him up early and told her that he was hurt. According to his mother's testimony, he told her on the night of the injury that he picked up something and pulled his back. He learned that he had a congenital back deformity when he was hospitalized in Shreveport. He told his supervisor that he felt like he had "pulled his back or something." He told the doctor in Dallas that "for the past three months he'd had a low back pain with pain down the right leg." After talking to people in the hospital in Dallas with similar injuries, he came to the conclusion that this was a job-related injury under the Texas workers' compensation statute.

From this evidence, a jury could reasonably infer that a prudent person would have connected the injury to the job before the thirty-day time period had elapsed in which he was required to notify his employer.

The judgment of the trial court is affirmed.